# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| COSTA & GRISSOM MACHINERY | ) | |
| COMPANY, INC., AND COSTA | ) | |
| LEVIGATRICI, S.P.A.[1] | ) | |
| | ) | Civil Action File No.: |
| Plaintiffs, | ) | 1:08-CV-2948 (CAP) |
| | ) | |
| vs. | ) | |
| | ) | |
| QINGDAO GIANTWAY | ) | |
| MACHINERY CO. LTD., AND LOBO | ) | |
| MACHINERY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS TO COMPEL COMPLETE INERROGATORY
RESPONSE AND FOR SACTIONS AND DEFENDANTS' MOTION FOR
SACTIONS AND TO COMPEL 30(b)(6) DEPOSITIONS**

## I.    Background Facts

PLAINTIFFS COSTA & GRISSOM MACHINERY COMPANY, INC. and

COSTA LEVIGATRICI S.p.A. ("CGMC") file this combined brief in Response

---

[1] In both the first and second Motions for Leave to File an Amended Complaint, CGMC requested the addition of Costa Levigatrici, S.p.A., as a party to this action. [Dkt. Nos. 16 and 43].  In the Response in Opposition to the first Motion, Defendants did not object to adding Costa Levigatrici as a party, and it is therefore noted, here. *See* [Dkt. No. 16].

and Opposition to Defendants Qingdao Giantway Machinery, Ltd. and Lobo Machinery Corporation's (collectively, "Defendants") Motion to Compel a Complete Interrogatory Response and Motion for Sanctions ("Interrogatory Motion," attached hereto as **Exhibit A**; [Dkt. No. 36]) and Motion for Sanctions and to Compel 30(b)(6) Deposition ("Deposition Motion," attached hereto as **Exhibit B**; [Dkt. No. 37]). Plaintiff is filing a consolidated response because the issues raised in Defendants' motions are intertwined and are mooted by CGMC's recently filed Motion for Leave to File its Second Amended Complaint[2] and by Plaintiffs' offer to provide Defendants with any additional relevant discovery they seek. (*See* Defendants' December 18, 2008 Response to Offer of Compromise Letter, a true and correct copy of which is attached hereto as **Exhibit C**.)

Because Defendants do not want attention paid to the substance of the claims asserted in this action, Defendants have sought to create a tempest around every discovery issue they could concoct. Indeed, Defendant Qingdao went so far

---

[2]     CGMC first requested leave to amend its complaint on October 15, 2008, to add a trade dress claim. [Dkt. No. 16]. After briefing, the motion was submitted to this Court on November 26, 2008, but has not yet been ruled on. Since further investigation and discovery has occurred, CGMC filed a second motion to amend on December 30, 2008. [Dkt. No. 43.] As discussed on numerous occasions with Defense counsel, the second Amended Complaint addresses all of Defendants' alleged discovery concerns.

as to suspend a Rule 30(b)(6) deposition ***after six hours and nineteen minutes of testimony***, claiming that the witness was insufficiently responsive. (*See* Deposition of Scott Grissom, 190:16-191:4, relevant pages of which are attached hereto as **Exhibit D**; Declaration of Tracey Kennedy, ¶5, attached hereto as **Exhibit E**.) Such actions are more consistent with a party's search for a discovery issue than its search for the truth.

This case has it roots in facts Defendants wish to ignore. In March 2007, Qingdao attended a trade show in Shanghai, China. At that show, Defendant Qingdao displayed a CGMC A Series sander ("the "Shanghai Machine"). (*See* Affidavit of Scott Grissom, Exh. B at pp. 13-22 to Motion to File Second Amended Complaint, [Dkt. No. 43], attached hereto as **Exhibit F**.) CGMC's representatives at the Shanghai show confirmed that the Shanghai Machine was a CGMC machine because CGMC's name appeared on the machine where Qingdao had neglected to remove it. Moreover, CGMC personnel also recorded the serial number on the Shanghai Machine and found that it matched the serial number on a machine sold to a Chinese woodworking company in November 2006. *Id.* After consultation with law firms specializing in Chinese law, and being advised that the Chinese judicial system would be unlikely to consider any claims against a Chinese company, CGMC did not initiate a legal action in China.

In August 2008, Defendants attended the International Woodworking Fair ("IWF") in Atlanta, Georgia and displayed a machine that looked identical, or nearly identical, to a CGMC machine (the "IWF Machine"). (Declaration of Brian Knapp, ¶¶ 4-9, attached hereto as **Exhibit G**.) Believing that, as in Shanghai, Defendants were displaying and marketing a CGMC machine to sell Qingdao machines, CGMC took emergency action. (*See* Transcript of August 22, 2008 Hearing before Judge Groger, Fulton County Superior Court, [Dkt. No. 22], the relevant pages of which are attached hereto as **Exhibit H**, pp. 6-7.) Based upon the facts recited herein, CGMC and its counsel believed in good faith that the IWF Machine was a CGMC machine. By court order, the Defendants' machine was seized for further testing and investigation by CGMC. (Order of the Superior Court of Fulton County, August 22, 2008, attached hereto as **Exhibit I.**)

CGMC took possession of the IWF Machine and conducted a detailed examination. As ordered by the Superior Court, CGMC filed a report with its findings regarding the source of origin of the IWF Machine ("Report"). [Dkt. No. 5]. Scott Grissom, President of CGMC; Richard Brown, CFO of CGMC; and Stefano Costa of CGMC conducted the examination. CGMC's findings were inconclusive; it could not determine for certain whether the IWF Machine was a

CGMC machine, but the Report indicated where the IWF Machine and CGMC Series A machines had both similarities and differences. *Id.*

Defendant Qingdao has been understandably curious about every aspect of the report. In particular, Qingdao has focused on every identifiable difference between the IWF Machine and CGMC A Series machines. Qingdao has been frustrated in these efforts because Qingdao is attempting to do the impossible. Qingdao's efforts assume there is a standard CGMC A Series prototype by which the common elements of every CGMC A Series machine can be defined. It is against that assumed prototype that Qingdao seeks to have CGMC compare the IWF Machine. (*See, e.g.,* Grissom Dep., Exh. D at 37:15-18; 40:9-15; 47:7-48:20.)

Unfortunately, the assumed prototype that is essential to the analysis Qingdao asks CGMC to perform does not exist. Each CGMC machine is manufactured to the unique specifications of its end user. (Affidavit of Scott Grissom, January 5, 2009, attached hereto as **Exhibit J**.) The components and vendor sources for each machine may differ. (*Id*.) As such, the IWF Machine would by definition have some differences from every A Series machine, just as each A Series machine has some differences from every other A Series machine. (*Id*.) Simply put, each of CGMC's A Series sander machines, except as to trade dress, is unique due to customer specifications. Each A Series machine is built to

order to customer specifications.  It is therefore common that even machines of the same model number may, and usually do, differ because of customer requirements. As a consequence, when counsel inquired of Scott Grissom, CGMC's corporate designee, as to the differences present or not present in the two machines, the witness quite rightly explained such differences between one CGMC machine and another were irrelevant to the question of whether the IWF Machine is a Costa Machine.  (*See, e.g.,* Grissom Dep., Exh. D at 37:15-18; 40:9-15; 47:7-48:20.) Mr. Grissom also correctly noted that such difference would be irrelevant to the question of whether the IWF Machine was a CGMC Machine that Qingdao had modified.  (*Id*. at 49:22-51:5.)

As Mr. Grissom testified, there is no single "silver bullet" that would demonstrate that CGMC was the source of the IWF Machine.  (Grissom Dep., Exh. D at 185:24-186:8.)  CGMC is unable to verify, with complete certainty, that the IWF Machine was one of its machines based on the examination conducted at the time of the deposition.  (Report, p. 2.)  Because CGMC could not allege with certainty that the IWF Machine is a CGMC machine, it has, in good faith, sought to amend its Complaint.  The decision to seek to amend the Complaint has been based entirely on CGMC's own work and its own research.  (Parenthetically, but importantly, none of this research could have been done without taking possession

of the IWF Machine.)  Defendants have not yet made a single discovery response, only requested extensions while berating CGMC for taking any legal action at all.

Defendants have framed the issues in the case to revolve around the passing or palming off claims only, which were pleaded in the alternative in the First Amended Complaint and removed in the Second Amended Complaint.  (*See generally* Exhs. A and B.)  Stubbornly, Defendants do not acknowledge that a legal framework even *exists* under which CGMC is entitled to relief based upon other legal theories.  (*See* Deposition Motion, Exh. B at pp. 5-9; Interrogatory Motion, Exh. A. at pp. 2-4.)  Contrary to state and federal law, Defendants assert that, absent patent or copyright protection, a competitor may copy and knockoff the products of another and cause confusion in the market with impunity.  (*Id.*)  The Lanham Act and the Georgia Uniform Deceptive Trade practices Act both provide otherwise.  Both the federal and the state statutes provide remedies when a competitor intentionally causes confusion in the market by copying or adopting a confusingly similar trade dress.  *See* 15 U.S.C. § 1125(a); O.C.G.A. § 10-1-372. After investigation and extensive consultation with Defendants' counsel, CGMC

has sought to amend its Complaint to focus on these counts, which make Defendants' motions moot.[3]

## II.    Relevant Facts and Procedural Posture

### A.    Facts Regarding the 30(b)(6) Deposition

Defendants first served notice of a 30(b)(6) deposition of CGMC on September 12, 2008, with an amended notice served on October 9, 2008. (True and correct copies of the Deposition Notices are attached hereto as **Exhibit K.**) On October 15, 2008, Mr. Grissom spent four hours with counsel preparing for his deposition.[4] On October 16, 2008, CGMC produced Scott Grissom, President of

---

[3] Defendants repeatedly quote Plaintiff's counsel's verbal declaration during a TRO hearing that a competitor can copy a machine that has no copyright or patent protection like some talismanic incantation, perhaps hoping the law will magically change to conform to that statement. Of course, the subject of trade dress protection was not part of the dialogue with the superior court that Defendants quote, but trade dress protection is recognized under the law. To the extent that counsel's comments at an emergency TRO hearing are capable of proving anything, they only prove that counsel lacks spontaneous, encyclopedic recall of all manner of intellectual property protection. Counsel's failing in this regard is not a defense to the claims asserted here.

[4] As lead Attorney of record for CGMC and the signatory of this Response, I hereby confirm and certify that I spent four hours with Mr. Grissom on October 15, 2008 preparing him for his 30(b)(6) deposition. Mr. Grissom and I reviewed Defendants' 30(b)(6) deposition notice, discovery requests, CGMC's Report and possible questions that Defense counsel may ask Mr. Grissom during his

CGMC, as the designee for the 30(b)(6) deposition. Counsel for Defendants was unhappy with Mr. Grissom's responses and had a discussion on the record with counsel for CMGC regarding the discovery that was expected before continuing the 30(b)(6) deposition. (Grissom Dep., Exh. D at 190-91.) Defendants then abruptly "adjourned" the deposition. (*Id.* at 190:17-19.)

Counsel for CGMC made it clear to Defendants that it considered the deposition to be complete whenever the Defendants chose to end it. (Grissom Dep., Exh. D at 191:25-192:26.) Defendants then filed the instant Deposition Motion asking this Court to compel CGMC to produce a 'prepared' 30(b)(6) witness.

The video service transcribing the deposition stated that the tape times show that the deposition lasted six hours and nineteen minutes. (Exh. E at ¶ 5.) Hence, there are still forty-one minutes remaining out of the standard seven hours

---

deposition. As lead counsel, I made a note during Mr. Grissom's deposition to correct his statement that other than reviewing Defendants' 30(b)(6) notice, he had not prepared for his deposition. However, during the deposition I was substituted by co-counsel to attend a previously scheduled conference. It was my intention to correct the record; however, Defense counsel abruptly terminated the deposition before the record could be corrected. The fact that Defense counsel has made a mountain out of this molehill shows the extent to which Defendants are pushing to avoid trying this case on the merits -- preferring instead to focus on contrived discovery disputes.

allocated for a deposition.  While one would expect learned counsel to be able to determine that a witness was non-responsive in less than six hours, Qingdao found Mr. Grissom sufficiently engaging for more than that period of time before he terminated the deposition.  Counsel for Defendants did not make any demands regarding Mr. Grissom's preparation or the desire to continue the deposition at a later time until counsel concluded the deposition with six hours and nineteen minutes elapsed.

Nonetheless, in the compromise letter of December 16, 2008, CGMC made clear that it would continue the 30(b)(6) deposition.  (Compromise Letter of December 16, 2008, a true and correct copy of which is attached hereto as **Exhibit L**.)  CGMC requested that Defendants withdraw both discovery motions and their opposition to CGMC amending its complaint, believing that the Second Amended Complaint would moot the discovery issues as they were framed by the Defendants.  *Id.*  CGMC agreed to continue the 30(b)(6) deposition as well as amend or withdraw each of the Counts asserted in the initial Complaint, also an attempt to compromise regarding the then recently-noticed Rule 11 Motion. CGMC offered to make these changes to better align the Complaint with the facts it had developed on its own.  Defendants were willing to accept CGMC's offer to withdraw its palming off claim, but refused to cooperate in streamlining the

discovery process by consenting to withdraw their discovery motions and opposition to CGMC amending the complaint. (Exh. C.) Defendants' refusal to accept this accommodation—this total concession—indicates rather clearly that Defendants are more interested in concocting a discovery dispute than in taking discovery.

Since the 30(b)(6) notice was sent and the deposition taken, CGMC has amended its Complaint to remove Count II for direct palming off or passing off. In its place, CGMC has asserted a claim under the Georgia Uniform Trade Practices Act for copying CGMC's machines in such a way as to create confusion in the market—confusion for which CGMC has empirical evidence. CGMC has also sought to add Count V for infringement of CGMC's trade dress under the Lanham Act.[5] Therefore, the Defendants' significant efforts at framing the issues to make them appear to be the wronged party in discovery will be mooted by the entry of the Second Amended Complaint.

---

[5] The first Motion for Leave to Amend, which initially added Count V for trade dress infringement under Section 43(a) of the Lanham Act, was filed on October 15, 2008, one day prior to the deposition.

**B.    Facts Regarding CGMC's Report Filed With This Court and Interrogatory No. 4.**

As is indicated above, each CGMC machine is custom made; there is no assembly line or mass production of the machines at issue.  (Grissom Aff.)  Each CGMC machine may have different specifications or dimensions from another CGMC machine, and there may be different vendors and component sources.  (*Id.*)

Interrogatory No. 4 seeks:

[i]temize and describe in detail any and all differences between the A Series Machine and the Qingdao Machine and identify and describe in detail any reports or other documents or tangible items of any  nature or sort relating to said studies and investigations.

(Exh. A.)

As is indicated above, it is impossible to answer this interrogatory in a truthful manner because there is no prototype that can be used as the standard for comparison for all A Series machines.  Each "A" Series machine is different. Hence, CGMC designated this line of sanders as a 'series.

CGMC responded to Interrogatory No. 5, stating that all differences that it was aware of between the IWF Machine and the machine to which it was compared were listed in the report prepared for the Court.  The Court's order required findings regarding source, which CGMC drafted and provided.

In the December 16, 2008 letter of compromise CGMC also requested that Defendants withdraw the Interrogatory Motion.  (Exh. L.)  No compromise was reached, and Defendants would not consider withdrawing these motions based on the proposed amendments.  (Exh. C.)

If the palming off claims were to remain after the entry of the Second Amended Complaint, the discovery requested by Defendants would still be irrelevant and unhelpful.  Specifically, of the over 1,400 A Series machines produced thus far, all are different.  No two are exactly the same, therefore any specification or dimensional differences may not indicate source.  (Ex. J, Grissom Aff.)

Additionally, the proposed amendments provided in the letter directly undermine Defendants' framing of the issues in this case.  Instead of asserting that the IWF Machine was a CGMC product, as initially believed, CGMC has attempted to amend its complaint to pursue the more appropriate trade dress claims.  The machines *looked* identical, and CGMC has a paint scheme that Defendants clearly copied.  These claims will not require the meticulous and detailed technical analyses that determining whether the machine was a CMGC machine would.  Much of that type of discovery would not be necessary at all, except to show willfulness by the Defendants.  CGMC attempted to narrow the

issues in the case, including narrowing discovery, and suggested compromise in the interest of judicial economy and cost savings for both our clients to narrow the issues and resolve the lingering disputes.

### III.    Argument

### A.    CGMC Agrees to Continue the 30(b)(6) Deposition But Should Not be Sanctioned

Defendants have cited *Black Horse Lane Assoc.'s L.P. v. Dow Chem. Corp.*, 228 F.3d 275 (3rd Cir. 2000) and *Resolution Trust Corp. v. S. Union Corp.*, 985 F.2d 196 (5th Cir. 1993), stating that presenting an unprepared witness is a failure to appear.  Mr. Grissom prepared for his deposition.  (*See* footnote 4.)  Whether or not he fully understood what would be required of him is a different question, and CGMC should not be sanctioned for not being able to predict how a witness will perform in a 30(b)(6) deposition.  In any event, producing a nervous or forgetful 30(b)(6) witness is not a basis for sanctions.  *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2nd Cir. 1986); *U.S. v. Massachusetts Indus. Finance Agency*, 162 F.R.D. 410, 412 (D.Mass. 1995); *Dairyland Power Cooperative v. U.S.*, 79 Fed.Cl. 709, 715 (US Fed.Cl. 2007).    Had Defendants identified the areas in inquiry Mr. Grissom did not reasonably address, CGMC would have worked with Defendants' counsel to fill the gaps.

Additionally, Defendants have framed the issues of this case within the context of CGMC's "palming off" or "reverse passing off" claims, which were amended to state claims for likelihood of confusion under the Georgia Uniform Deceptive Trade Practices and Lanham Acts in CMGC's Second Amended Complaint. (*See* Second Amended Complaint; Dkt. No. 43.) With those issues out of the case, the overwhelming majority of subjects on which Mr. Grissom was questioned are, likewise, out of the case.

Each CGMC machine is a unique, one of a kind machine that can have different vendors and sources for components. Defendants' counsel questions to Mr. Grissom did not reflect an understanding of this situation. On the contrary, counsel for Defendants asked over and over again which minor and very specific differences there were between the IWF Machine and the comparison machine. (*See* Def's Motion, pp. 15-19.) As Mr. Grissom repeatedly explained, these differences are irrelevant. (*See, e.g.*, Grissom Dep., Exh. D at 47-52, 55:19-56:9; 67:2-69:7.) Except for their indicative trade dress, each CGMC A Series machine necessarily differs from all other CGMC A Series machines. Additionally, any difference identified in the IWF Machine could have been explained by modifications to a CGMC machine made by Qingdao. Hence, identifying such differences proved nothing, other than Defendants' counsel could waste a

significant portion of over six hours on non-issues. In any event, CGMC's report and investigation focused on what may identify the source of the IWF Machine, as specifically requested by the Court, and Mr. Grissom testified appropriately on that subject. During those six hours and forty-one minutes of testimony, though, counsel chose to use his time revisiting topics countless times and asking questions that went far beyond the scope of the designated topics. (*See* Grissom Dep., Exh. D at 89-93 (a line of questions about how buyers decide on their machines, including comparing the purchase to buying a pack of gum); 78-79 (asking Mr. Grissom the types of cars he has driven); 49-56 (repeatedly asking questions about "differences" that Mr. Grissom said were irrelevant).) Despite the recent contentiousness, CGMC's offer to continue the deposition for the forty-one minutes still stands. Defendants chose to ignore this offer and the attempt to compromise and resolve the dispute without unnecessary expense to our clients and this Court. (*See* Exh. **C**.)

Independently, consistent with a motion that is focused on creating issues rather than pursuing discovery, Defendants' motion does not clearly reveal what Defendants are actually requesting. Defendants have moved to compel a prepared 30(b)(6) witness, nothing more. As is indicated above, CGMC is prepared to

provide a witness on any 30(b)(6) subjects that remain in the case that Mr. Grissom did not fully cover.

If Defendants are requesting an entirely new 30(b)(6) deposition on the identified subjects, CGMC opposes such a request. Defendants had a witness for over six hours, and his answers stand. Inappropriate and non-productive questions should not result in another full, seven hour deposition for the Defendants, and most of the subjects that were the subject of the deposition notice are now moot.

CGMC realizes, however, that Defendants will also likely want to depose a representative regarding the trade dress and likelihood of confusion counts presented in the Second Amended Complaint. To the extent that Defendants wish to take the 30(b)(6) deposition regarding those topics, CGMC believes it is reasonable to negotiate additional time, and it is prepared to do so.

**B.    CGMC Provided a Complete Response to Interrogatory No. 5 and Should Not be Sanctioned, and the Interrogatory is Now Moot.**

Mr. Grissom's testimony in the 30(b)(6) deposition, referenced above, is reflective of the same issues Defendants present regarding this Interrogatory. Defendants again frame the issue solely in the context of the palming off claims filed in the original Complaint. (Exh. A at pp. 2-4.) In fact, the only legal authority cited in the Interrogatory Motion is to attempt to frame its case to read out any potential trade dress protection.

For the same reasons discussed with regard to the Deposition Motion, the Interrogatory Motion is now moot because the First Amended Complaint asserted claims in the alternative and the Second Amended Complaint replaced the palming off Count II and focused the case on trade dress infringement.  There was no substantive response to CGMC's compromise letter of December 16, 2008, which asked Defendants to consider the proposed amendments.  (*See* Exhs. C and L.)

Defendants strongly objected to CGMC's response to Interrogatory No. 5 that references the Report provided to the Court.  The Court required that CGMC "report to the Court as to its findings concerning the source and origin of the [IWF] Machine."  (Ex. I.)  This report is what CGMC provided.  CGMC studied the indications of source of the IWF Machine, to the extent that they exist.  Defendants have criticized the report as incomplete and not addressing each and every criteria of the Interrogatory, resulting in this Motion.  As Mr. Grissom noted in his deposition, these differences are irrelevant to source.  And, as explained above, the detail requested by Interrogatory No. 5 is also irrelevant to the trade dress claims.

One "difference" that Defendants cite is that the machines have different shapes and dimensions, which they base on measuring *photographs*.  Exh. A at p. 15.  However, drawing Defendants' conclusions would require a certification that the machines were placed the same distance from the camera, that they were

photographed from the same angle, with the same camera and focus settings, etc….

Such specification is appropriate for an *expert report* under Rule 26, and is not the

type of findings requested by the Court.[6]  This line of questioning also shows that

Defendants are more interested in discovery disputes than addressing the merits of

this case.

As with the related Deposition Motion, Defendants have misunderstood (or

have chosen to misunderstand) the factual situation and have not directed their

Interrogatories to the situation.  Defendants have also requested details that are

more appropriate for an expert report under Federal Rule of Civil Procedure 26,

which has substantially different requirements than the report requested for the

purposes of determining the origin of the IWF Machine.  CGMC  has not identified

any experts in this matter, nor have expert reports even been considered.

### IV.    Conclusion

For the reasons set forth above, CGMC opposes Defendants' Motions to

Compel a Prepared 30(b)(6) Witness and a Complete Interrogatory Response and

the award of any sanctions.  CGMC believes that both motions are now moot,

---

[6]     Notably, many of the questions posed to Mr. Grissom in his deposition seem to be of the type directed toward a Rule 26 expert, not a 30(b)(6) deponent.  (*See, e.g.,* Grissom Dep., Exh. D. at 32, 49-56.)

based on its Second Amended Complaint, and has offered a compromise to satisfy Defendants' concerns. Therefore, CGMC respectfully requests that this Court DENY Defendants' Motions.

Respectfully submitted this 5th day of January, 2009.


|  |  |
|---|---|
| | **ADORNO & YOSS LLC** |
| 1349 W. Peachtree Street, Suite 1500 | |
| Atlanta, GA 30309 | //s// Cary Ichter |
| 404.347.8300 (tel) | Georgia Bar No. 382515 |
| 404.347.8395 (fax) | Guy H. Weiss |
| Email:      cichter@adorno.com | Georgia Bar No. 746741 |
| gweiss@adorno.com | R. Scott Griffin |
| rsgriffin@adorno.com | Georgia Bar No. 140807 |
| | Attorneys for CGMC and CL |

## LOCAL RULE 7.1D CERTIFICATE

I hereby certify, pursuant to LR 7.1D, NDGa., that **PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL COMPLETE INTERROGATORY RESPONSE AND FOR SANCTIONS AND DEFENDANTS' MOTION FOR SANCTIONS AND TO COMPEL 30(b)(6) DEPOSITIONS** was prepared using size 14 Times New Roman font as required by LR 5.1B, NDGa.

This 5th day of January, 2009.

**ADORNO & YOSS LLC**

//s// Cary Ichter
Georgia Bar No. 382515

1349 W. Peachtree Street, Suite 1500
Atlanta, GA 30309
404.347.8300 (tel)
404.347.8395 (fax)
Email: cichter@adorno.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2009, a copy of the foregoing **PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL COMPLETE INTERROGATORY RESPONSE AND FOR SANCTIONS AND DEFENDANTS' MOTION FOR SANCTIONS AND TO COMPEL 30(b)(6) DEPOSITIONS** and this **CERTIFICATE** were electronically filed with the clerk of court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Donald R. Andersen                    Tasha Kemi Inegbenebor
dandersen@stites.com                  tinegbenebor@stites.com

Catherine M. Banich                   Jack A. Wheat (*Pro Hac Vice*)
cbanich@stites.com                    jwheat@stites.com

                                      Haley M. Dickerson (*Pro Hac Vice*)
                                      hdickerson@stites.com

This 5th day of January, 2009.

ADORNO & YOSS LLC

//s// Cary Ichter
Georgia Bar No. 382515

1349 W. Peachtree Street, Suite 1500
Atlanta, GA 30309
404.347.8300 (tel)
404.347.8395 (fax)
Email: cichter@adorno.com