**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

COSTA & GRISSOM MACHINERY
COMPANY, INC.,

        Plaintiff,

        v.

QINGDAO GIANTWAY MACHINERY
CO., LTD. and LOBO MACHINERY
CORPORATION,

        Defendants.

CIVIL ACTION
NO. 1:08-CV-2948-CAP

## O R D E R

This matter is now before the court in regard to the plaintiff's ex parte request for a hearing on all pending motions; the plaintiff's motions to amend its complaint [Doc. Nos. 16 and 43]; the defendants' motion for Rule 11 sanctions [Doc. No. 41];[1] the plaintiff's motion to compel the defendants to comply with this court's November 7, 2008, order or, in the alternative, motion for reconsideration of and motion to stay execution of the November 7,

---

[1] The defendants' motion for Rule 11 sanctions is identified on the docket as "Memorandum of law in Support of Defendant's 36 Motion to Compel Complete Interrogatory Response Motion for Sanctions, 37 Motion for Sanctions Pursuant to Fed. R. Civ. P. 11." In reality, it appears that Doc. No. 41 is a memorandum of law in support of a motion for Rule 11 sanctions. However, the court cannot find the actual motion that this memorandum supports. Nonetheless, the court will construe the memorandum as a joint motion and memorandum of law for Rule 11 sanctions. The clerk is DIRECTED to correct the docket to identify Doc. No. 41 as the defendants' Motion and Memorandum of Law for Rule 11 sanctions, to identify Doc. No. 48 as the response to this motion, and to identify Doc. No. 55 as the reply to this motion.

2008, order [Doc. No. 31]; the defendants' motion to compel complete interrogatory response and motion for sanctions [Doc. No. 36]; and the defendants' motion to compel the plaintiff's 30(b)(6) deposition and motion for sanctions [Doc. No. 37].

I.  **Case Overview**

The plaintiff, Costa & Grissom Machinery Company, Inc. ("CGMC") is a North Carolina company that markets a wide-belt sander "A" series machine ("A series machine") produced by Costa Levigatrici S.p.A. ("CL"), an Italian company. According to the complaint, the A series machine is an all-purpose sanding center controlled by a touch screen PC and software. It is built on a heavy-duty modular frame that can accommodate up to six working units. In August 2008, CGMC was setting up an exhibit for the A series machine at the annual International Woodworking Fair ("IWF"), the largest woodworking show in the western hemisphere, when CGMC's employees saw a display by defendant Qingdao Giantway Machinery Co., Ltd. ("Giantway"), a Chinese company. Giantway's display included a machine ("the IWF machine") with defendant Lobo Machinery Corporation's ("Lobo") logo on its front panel. CGMC contends that, with the exception of the logos on the machines, the IWF machine is identical to its A series machine. CGMC also

contends that Giantway copied portions of CGMC's brochure for the machine.

In its original and proposed first amended complaint, CGMC alleged that the defendants removed the CGMC and CL logos from one of CGMC's A series machines, affixed Lobo's labels on the front of the machine, and attempted to pass the machine off as their own. Based on these allegations, CGMC claimed that the defendants had engaged in unfair competition, deceptive trade practices, and tortious interference with contractual relations, business relations, or potential business relations. CGMC sought a temporary restraining order ("TRO"), injunctive relief, and seizure of the defendants' machine, papers and documents located in the state of Georgia. In addition, CGMC sought various damages.

On August 21, 2008, CGMC filed its complaint and a motion for a TRO, interlocutory injunction, seizure of counterfeit products, and expedited discovery in the Superior Court of Fulton County. The day after the complaint and motion for a TRO was filed, the Fulton County Superior Court held an emergency hearing on the TRO motion. The defendants were not represented by counsel at the hearing. As a result of that hearing, the court ordered the defendants to surrender the IWF machine to CGMC and to immediately deliver to CGMC copies of all documents reflecting sales orders, sales prospects, and sales contacts that the defendants had made at

the IWF.  The court instructed CGMC to absorb all costs associated with obtaining and returning the machine, and further required CGMC to report its findings concerning the source and origin of the IWF machine to the court at a preliminary injunction hearing scheduled for September 22, 2008.  In the meantime, the court permitted the parties to engage in limited discovery.

On September 19, 2008, the defendants removed this case to this court.  On September 23, 2008, CGMC filed the report it prepared at the direction of the Fulton County Superior Court regarding the origin of the IWF machine ("the report") [Doc. No. 5].  On September 25, 2008, the defendants filed their answer and counterclaim to CGMC's complaint [Doc. No. 12].  In their answer, the defendants largely denied CGMC's allegations.  In addition, the defendants asserted counterclaims for wrongful seizure, product disparagement, defamation, tortious interference with business relationships, tortious interference with prospective business relations, and attorneys' fees.  For relief, the defendants requested dismissal of CGMC's complaint, an order requiring CGMC to return the IWF machine to the defendants, compensatory and punitive damages, the costs of this action, and interest.

On October 20, 2008, CGMC answered the defendants' counterclaims [Doc. No. 21]. In its answer, CGMC denied the defendants' allegations and denied that the defendants were entitled to any relief.

## II. CGMC's Ex Parte Request for a Hearing on All Pending Motions

On January 13, 2009, CGMC's counsel contacted this court and requested a consolidated hearing on all currently pending motions. As a result of that request, the court directed the parties to file a joint status report listing each of the motions upon which they would like a hearing and identifying the issues for the court to resolve in regard to those motions. On February 11, 2009, the parties complied with that directive [Doc. No. 57]. In the joint status report, CGMC concedes that there is no reason for a hearing on these motions other than to give the court an opportunity to address any questions it may have and to provide the court with "a forum within which to remind counsel of their duty of candor in dealing with the court." Joint Status Report at pp. 1-2 [Doc. No. 57]. The defendants do not request a hearing on any of the pending motions.

At this point in time, the court DENIES CGMC's request for a hearing. If it decides that it needs a hearing in the future, it will alert the parties accordingly.

III. <u>CGMC's Motions for Leave to File an Amended Complaint [Doc. Nos. 16 and 43]</u>

A.    <u>Overview of the Motions to Amend</u>

CGMC has filed two motions to amend its complaint.  In its first motion [Doc. No. 16], filed on October 15, 2008, it sought to add CL, the Italian company that manufactures the A series machine and whose owner is a fifty percent (50%) owner of CGMC, as a plaintiff in this action pursuant to Federal Rules of Civil Procedure 19 and 20.  In addition, CGMC sought to add a claim for trade dress infringement under the Lanham Act ("federal trade dress infringement claim").

Before the court had an opportunity to rule on the first motion for leave to amend the complaint, CGMC filed a motion for leave to file a second amended complaint [Doc. No. 43].  In this motion, CGMC again asked the court to allow it to add CL as a plaintiff and to add a claim for trade dress infringement.  In addition, however, CGMC sought to withdraw counts I, III, and IV. Moreover, CGMC sought to amend count II from a "reverse palming off" claim to a "likelihood of confusion" claim and to add facts in support of this claim and the new trade dress infringement claim.

The defendants do not object to CGMC's request to add CL as a plaintiff or to CGMC's request to withdraw any claims.  The defendants do, however, argue that the court should deny CGMC's

-6-

motion to add a federal trade dress infringement claim and to amend count II to allege the Georgia equivalent of a trade dress infringement claim.  First, they contend that the new trade dress infringement claims would be futile.  Second, they argue that it is unfair for GCMC to attempt to salvage its case by replacing reverse palming off claims that it knew were untenable for months prior to filing the second amended complaint with "an entirely new and futile theory of recovery."  Defs.' Resp. Br. at p. 5 [Doc. No. 49].  The defendants contend that leave to amend the complaint would be prejudicial in that it would require them to retake depositions and conduct totally new discovery.

**B.    Legal Standard**

"District courts are required to 'enter a scheduling order that limits the time to . . . join other parties and to amend the pleadings.'"  Sosa v. Airprint Systems, 133 F.3d 1417, 1418 (11th Cir. 1998) (citing Fed. R. Civ. P. 16(b)).  If a motion for leave to amend a pleading is filed after a party has been served with a responsive pleading but before the deadline set forth in the scheduling order, Federal Rule of Civil Procedure 15 states that the pleading may be amended "with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2). On the other hand, if leave to amend is sought after the deadline

set forth in the scheduling order, the moving party must demonstrate that there is "good cause" for the amendment or the court cannot modify the schedule. <u>Sosa</u>, 133 F.3d at 1418 (citing Fed. R. Civ. P. 16(b)). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" <u>Id.</u> (quoting Fed. R. Civ. P. 16 Advisory Committee Notes and citing <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992)). "If a party was not diligent, the [good cause] inquiry should end." <u>Johnson</u>, 975 F.2d at 609 (cited by <u>Sosa</u>, 133 F.3d at 1418); <u>see also</u> <u>Wolf Designs, Inc., v. DHR & Co.</u>, 231 F.R.D. 430, 436 (N.D. Ga. 2005)("To show good cause, a party must, as a prerequisite to further consideration of the motion, show diligence as to the matter that is the subject of the motion to amend."). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." <u>Johnson</u>, 975 F.2d at 609.

If a party demonstrates good cause for its untimely amendment under Rule 16(b), the court may then return to the Rule 15 analysis and freely allow the party to amend its complaint if the parties agree to the amendment or if "justice so requires." Fed. R. Civ. P. 15(a)(2); <u>Sosa</u>, 133 F.3d at 1419 (noting that it is only after a party demonstrates good cause under Rule 16(b) that the court will consider whether an amendment is proper under Rule 15(a)).

Although courts conventionally allow amendments under Rule 15(a), leave to amend "may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'"   <u>Brewer-Giorgio v. Producers Video, Inc.</u>, 216 F.3d 1281, 1284 (11th Cir. 2000) (citing <u>Abramson v. Gonzalez</u>, 949 F.2d 1567, 1581 (11th Cir. 1992)).

In this case, both parties agree that CGMC's second motion to amend subsumes and effectively moots CGMC's first motion to amend. The parties' second motion for leave to amend, however, was filed on December 30, 2008, over two months after the entry of the scheduling order [Doc. No. 26].   The scheduling order adopts the terms set forth in the parties' joint preliminary report [Doc. No. 25], which provides that "[a]mendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law."   Joint Preliminary Report at p. 12 [Doc. No. 25].   CGMC's motion to amend was undisputably filed after this period; hence, Rule 16(b)'s "good cause" standard is applicable.

**C.   <u>Uncontested Amendments</u>**

As noted above, CGMC seeks in both its first and second motions to amend its complaint to add CL as a plaintiff in this action.   The defendants have not opposed this amendment.   Because

-9-

CGMC was diligent in seeking this amendment, the court will GRANT the motion to amend to the extent that it seeks to add CL as a party.

In its second motion for leave to amend its complaint, CGMC also seeks to withdraw counts I, III, and IV, arguing that such action will "streamline the case and simplify discovery." Pls.'s Reply Br. at p. 7 [Doc. No. 53]. The defendants do not contest CGMC's request to amend in this regard, although they do contend that CGMC should have withdrawn these claims when the report "demonstrated that there [was] no evidence that the Defendants modified an A Series Machine and displayed it as their own." Defs.' Resp. Br. at p. 4 [Doc. No. 49]. As discussed in greater depth in regard to the defendants' motion for Rule 11 sanctions, the court cannot conclude that CGMC demonstrated a lack of diligence by failing to withdraw its reverse palming off claims immediately after it generated its report. CGMC has not clearly stated that it could not have moved to withdraw these claims before the deadline set forth in the scheduling order; however, the court - in light of the defendants' consent to the amendment - will presume that good cause exists for CGMC's untimely withdrawal of its claims. Accordingly, it will GRANT CGMC's motion to withdraw counts I, III, and IV.

D.    <u>Contested Amendments</u>

As discussed above, CGMC also seeks to amend its complaint by adding a claim for trade dress infringement under federal law, amending count II to reflect a trade dress infringement claim under state law, and adding additional facts in support of these new claims.  As an initial matter, the court DENIES CGMC's motion to amend to the extent that it seeks to transform count II from a Uniform Deceptive Trade Practices Act claim premised on reverse palming off to a Uniform Deceptive Trade Practices Act claim premised on trade dress infringement.  As the defendants point out in their brief, CGMC has not explained why it did not seek to add this claim before the deadline for amendments set forth in the scheduling order.  As GCMC represents in its brief, the state trade dress infringement claim is based on the same factual inquiries as the federal trade dress infringement claim.  See Defs.' Reply Br. at 9 [Doc. No. 53].  Thus, CGMC should have been on notice when it filed its first amended complaint, which added a trade dress infringement claim under federal law, of the possibility of a state trade dress infringement claim.  It may not belatedly add a state law claim without a more compelling explanation of its delay in asserting it.  Accordingly, the court concludes that "good cause" does not exist for modifying the scheduling order to amend the

complaint to add this claim.[2]

The only remaining issue for this court to determine in regard to the motions to amend is whether to allow CGMC to add a federal trade dress infringement claim and facts in support thereof. CGMC first diligently moved to assert this claim prior to the entry of the scheduling order. The court cannot conclude that this claim is so futile that it would warrant the denial of a motion to amend. Nor can the court conclude that the addition of this claim would significantly prejudice the defendants, who have been on notice of the possibility of this claim for months. Thus, the court is compelled to GRANT CGMC's motion to add this claim.

In making this ruling, the court is cognizant of the fact that CGMC's second amended complaint streamlines the trade dress infringement claim asserted in the first amended complaint and adds factual allegations in support of this claim. None of the alterations that CGMC made in relation to these claims appear to be based on newly discovered evidence; to the contrary, some of the new factual contentions contain references to events that occurred in

---

[2]    Because CGMC has chosen to "narrow the issues" in this case and "conform the complaint to the evidence discovered thus far" by withdrawing the rest of its reverse palming off claims, the court presumes that CGMC also intended to withdraw its original Uniform Deceptive Trade Practices Act claim premised on allegations that the defendants were marketing CGMC's machine. For the same reasons that the court granted the withdrawal of the rest of the reverse palming off claims, the court likewise grants the withdrawal of original count II.

2007, well before the institution of this lawsuit.  The court is unclear on why CGMC could not have made the alterations it proposes in its second amended complaint in a timely fashion, and rebukes CGMC for using the court's docket as a drafting board. Nevertheless, because the new additions simplify and clarify CGMC's trade dress infringement claim without significantly altering the substance of that claim, the court will allow CGMC's trade dress infringement claim as stated in the second amended complaint to go forward.

## IV.  The Defendants' Motion for Rule 11 Sanctions [Doc. No. 41]

### A.  Overview of the Parties' Briefs

In their Rule 11 motion, the defendants seek sanctions on two grounds.[3]  First, they contend that CGMC blatantly misrepresented the law in the complaint and at the TRO hearing, which resulted in the wrongful seizure of the IWF machine.  Second, the defendants contend that CGMC failed to timely withdraw its reverse palming off claims after its examination of the machine revealed that it was not an A series machine.  The defendants request that the court impose monetary sanctions against CGMC and its counsel in the amount of the

---

[3]    Although the defendants' memorandum in support of its Rule 11 motion appears to seek sanctions based on the futility of CGMC's new trade dress infringement claims and on the inadequacy of CGMC's investigation prior to filing suit, their reply brief and their summary of this motion in the joint status report indicate that they are only seeking Rule 11 sanctions on the grounds articulated above.

reasonable attorneys' fees, costs, and expenses the defendants incurred in defending against CGMC's claims and in pursuing the Rule 11 sanctions.

In response, CGMC contends that the defendants have filed their Rule 11 motion to intimidate GCMC and to distract the court from the substantive issues in this case.  CGMC argues that, based on the facts and law known to it when it filed its complaint, it acted reasonably and with substantial justification.  It claims that at a trade show in Shanghai in 2007, Giantway palmed off a CGMC machine, complete with a CGMC serial number.  Thus, when CGMC saw the defendants' machine at the IWF, CGMC reasonably believed that it was one of its own machines.  It claims that this belief was reinforced because several industry insiders who were also at the show asked CGMC why Giantway was exhibiting a CGMC machine.  It argues that it had to act expeditiously so that Giantway could not return to China with the machine.  It essentially claims that its attorney did not have an opportunity to make a more in-depth inquiry into the situation to determine whether the claims were frivolous because time was of the essence and the immediate scheduling of an injunction hearing was essential.[4]

---

[4] In addition to these arguments, CGMC also contends that it attempted to reach a compromise with the defendants after the defendants notified it of their intentions to file the Rule 11 motion, but claims that the defendants were more interested in intimidation than resolution of issues and thus were not amenable

B.     **Legal Standard**

Federal Rule of Civil Procedure 11(b) states:

> By presenting to the court a pleading, written
> motion, or other paper – whether by signing,
> filing, submitting, or later advocating it – an
> attorney or unrepresented party certifies that to
> the best of the person's knowledge, information,
> and belief, formed after an inquiry reasonable
> under the circumstances:
>
>> (1) it is not being presented for any improper
>> purpose, such as to harass, cause unnecessary
>> delay, or needlessly increase the cost of
>> litigation;
>>
>> (2) the claims, defenses, and other legal
>> contentions are warranted by existing law or by
>> a nonfrivolous argument for extending, modifying,
>> or reversing existing law or for establishing new
>> law;
>>
>> (3) the factual contentions have evidentiary
>> support or, if specifically so identified, will
>> likely have evidentiary support after a
>> reasonable opportunity for further investigation
>> or discovery; and
>>
>> (4) the denials of factual contentions are
>> warranted on the evidence or, if specifically so

---

to the offer of compromise. On December 16, 2008, CGMC offered to
drop count I and amend counts II, III, and IV of its original
complaint. It also agreed to continue CGMC's 30(b)(6) deposition.
In exchange, CGMC asked that the defendants withdraw their
opposition to the first amended complaint and stipulate to its
proposed amendments, withdraw their motion for sanctions and to
compel the plaintiff's Rule 30(b)(6) deposition, and withdraw, or
in the alternative, extend time to respond, their motion to compel
a complete interrogatory answer. Dec. 16 letter from Cary Ichter
to Donald Anderson [Doc. No. 44, Ex. L]. The defendants did not
accept this offer of compromise, and CGMC did not move to amend its
complaint until after the defendants filed their Rule 11 motion.

identified, are reasonably based on belief or lack of information.

If a party violates Rule 11(b), Rule 11(c) authorizes a district court to impose sanctions on any attorney, law firm, or party responsible for the violation.[5]  A party making a motion for Rule 11 sanctions must make such a motion separate from any other motion and "must describe the specific conduct that allegedly violates Rule 11(b)."  Rule 11(c)(2).  A party must serve the Rule 11 motion on its opposing counsel, but may not file it or present it to the court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Id.

"The standard for testing conduct under amended Rule 11 is 'reasonable under the circumstances.'"  Anderson v. Smithfield Foods, Inc., 353 F.3d 912, 915 (11th Cir. 2003) (citing United States v. Milam, 855 F.2d 739, 743 (11th Cir. 1988)).

In determining whether to impose sanctions, the district court determines "whether the party's claims are objectively frivolous - in view of the facts or law - and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry."

Williams v. Carney, 266 Fed. Appx. 897, 898-99 (11th Cir. 2008)

---

[5]     However, the court may not impose monetary sanctions against a represented party for violating Rule 11(b)(2).  Fed. R. Civ. P. 11(c)(5).

(citing <u>Worldwide Primates, Inc. v. McGreal</u>, 87 F.3d 1252, 1254 (11th Cir. 1996)).  "Under the objective standard, '[a]lthough sanctions are warranted when the claimant exhibits a deliberate indifference to obvious facts, they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law.'" <u>Koly v. Enney</u>, 269 Fed. Appx. 861, 864 (11th Cir. 2008) (citing <u>Baker v. Alderman</u>, 158 F.3d 516, 524 (11th Cir. 1998)).  Thus, while "Rule 11 sanctions may be appropriate when the plain language of an applicable statute and the case law preclude relief . . . the purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression." <u>Id.</u> (internal punctuation and citations omitted).

If the court determines that Rule 11 sanctions are warranted, it must limit them "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  Appropriate sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Rule 11(c)(4).  If a court determines that an award of attorneys' fees is warranted, the award "should not exceed the expenses and

attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement." Fed. R. Civ. P. 11 Advisory Committee Notes on 1993 Amendments. Moreover, "[t]he award should not provide compensation for services that could have been avoided by an . . . an earlier challenge to the groundless claims or defenses." Id.

**C.  Analysis**

**1.  Contention 1: Blatant Misrepresentations**

As noted above, the defendants allege that Rule 11 sanctions are appropriate because CGMC blatantly misrepresented the law in its complaint and at the TRO hearing, which resulted in the wrongful seizure of the defendants' machine. The defendants argue that the statute under which CGMC seized the machine, codified at O.C.G.A. § 10-1-451, applies only to trademarks registered under Georgia law. However, the defendants argue that CGMC knowingly and intentionally misstated the law in its complaint by omitting from its nearly verbatim quote of O.C.G.A. § 10-1-451 the words that indicate this limitation. They highlight the differences by creating the following chart:

| O.C.G.A. § 10-1-451 as actually worded | O.C.G.A. § 10-1-451 as recited in the Verified Complaint, ¶ 30 |
|---|---|
| "Any owner of a trademark or service mark **registered under this part** may **proceed by action** to enjoin the manufacture, use, display, or sale of any counterfeits or imitations thereof; and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display, or sale as may be by the court deemed just and reasonable and may require the defendants to pay to such owner all profits derived from such wrongful manufacture, use, display, or sale, and all damages suffered by reason of such wrongful manufacture, use, display, or sale, or both profits and damages." | "Any owner of a trademark or service mark may enjoin the manufacture, use, display, or sale of any counterfeits or imitations thereof; and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display, or sale as may be by the court deemed just and reasonable and may require the defendants to pay to such owner all profits derived from such wrongful manufacture, use, display, or sale, and all damages suffered by reason of such wrongful manufacture, use, display, or sale, or both profits and damages." O.C.G.A. § 10-1-451. |

(Emphasis added to highlight portions of statute not recited in Complaint.)

Defs.' Reply Br. at pp. 3-4 [Doc. No. 55]. CGMC has not asserted that it owns any marks registered under Georgia law, and the defendants contend that they have not been able to locate any such registrations. Accordingly, they argue that the language omitted in the complaint and in oral argument before the Fulton County Superior Court would have made the seizure statute inapplicable. They contend that CGMC's failure to include this language at the TRO hearing was "particularly egregious" because this case was

"instituted on short notice against pro se defendants who [were] present in Georgia as visitors, far from the resources of legal counsel familiar with their own business or with the requirements of Georgia law." Id. at p. 7.[6]

Other than its representation above that it was acting under extreme time constraints, CGMC makes no specific response to the defendants' argument that it misused and misstated O.C.G.A. § 10-1-451 to improperly seize CGMC's machine.

While the court is willing to extend some leeway to CGMC due to the time constraints under which CGMC was operating when it filed this lawsuit, it cannot endorse CGMC's misrepresentation of the law to this court or to the Fulton County Superior Court. A cursory review of the language of O.C.G.A. § 10-1-451 and of the Lexis and Westlaw headnotes for this statute reveals that a trademark or service mark must be registered under Georgia law for the seizure statute to apply. O.C.G.A. § 10-1-451; Diedrich v. Miller & Meier & Associates, 334 S.E.2d 308, 311 (Ga. 1985) (noting that registration of a service mark or trademark is a prerequisite to relief under O.C.G.A. § 10-1-450 and -451). CGMC has not

---

[6]    The defendants also contend that CGMC masked the language requiring the posting of a bond from the Superior Court. However, the court has reviewed the transcript from the TRO hearing held before Judge Goger, and notes that CGMC's counsel mentioned to the Superior Court that it would be willing to post a bond if one was required. TRO Hearing Transcript at 11:15-16 [Doc. No. 22].

provided any evidence that it had any trademarks or service marks registered under Georgia law; indeed, its attorneys do not indicate that they even inquired of their client whether such registration existed prior to filing this suit. Absent trademarks or service marks registered under Georgia law, the seizure statute cited and relied upon by CGMC appears to be completely inapplicable; accordingly, Rule 11 sanctions are appropriate. See Koly, 269 Fed. Appx. at 864 (authorizing Rule 11 sanctions "when the plain language of the applicable statute and the case law preclude relief"). In this case, however, Rule 11 sanctions are especially warranted because CGMC, in addition to advocating a frivolous claim to the defendants' detriment, misled the court as to the plain language of the statute. As the Southern District of Georgia has stated, "[w]hen zealous advocacy leads counsel to misstate the law, Rule 11 sanctions are warranted." Howard v. Liberty Memorial Hospital, 752 F. Supp. 1074, 1079 (S.D. Ga. 1990); see also Fox v. Acadia State Bank, 937 F.2d 1566, 1569-70 (11th Cir. 1991) ("[W]hen parties attempt to pursue civil litigation with legal theories apparently foreclosed by statute and precedent, they must do so with candor toward the court . . . . [T]he plaintiffs failed to meet this standard of reasonableness and candor and [we] affirm the district court's holding that the plaintiffs are subject to sanctions.").

Under the circumstances presented here, the court concludes that CGMC's attorneys will only be deterred from taking advantage of an unrepresented party by making direct misrepresentations of the law if they and their law firm are forced to pay the defendants' reasonable attorneys' fees for calling CGMC's behavior to the court's attention. Accordingly, the court GRANTS the defendants' motion for attorneys' fees, and ORDERS CGMC's counsel to pay all fees incurred by the defendants in filing the portion of their Rule 11 motion and memoranda that relate to CGMC's misrepresentations.[7]

## 2. **Contention 2: Failure to Timely Withdraw Claims**

In their motion for Rule 11 sanctions, the defendants seek monetary sanctions from CGMC and its counsel for CGMC's persistence in pursuing its original claims for unfair competition (count I of the original complaint); uniform deceptive trade practices (count II); seizure (count III); and tortious interference (count IV). The defendants claim that CGMC did not have a reasonable chance of success in relation to these claims because, after CGMC's own engineers reviewed and analyzed the machine, they were unable to support CGMC's contention that the sanding machine seized at the

---

[7]    The court concludes that any additional damages caused by CGMC's misrepresentations in regard to O.C.G.A. § 10-1-451 will be better addressed in relation to the defendants' counterclaim alleging wrongful seizure.

IWF was the A series machine.  Instead, CGMC's engineers were only able to conclude that "[p]arts of Giantway's machine have been manufactured by Costa or its authorized suppliers or have been so meticulously reproduced by a third party that their look and functionality cannot be distinguished."  Report at p. 16 [Doc. No. 5].  The defendants contend that CGMC's insistence on pursuing its reverse palming off claims despite its own engineer's inability to conclude that the machine was an A Series machine is sanctionable under Rule 11.

In response, CGMC argues that its refusal to withdraw its reverse palming off claims at an earlier date is not sanctionable. It argues that its report regarding the origin of the IWF machine was inconclusive, and did not provide a "final determination that the IWF Machine was not a CGMC machine."  Defs.' Resp. Br. at 11 [Doc. No. 48].  CGMC essentially contends that it was entitled to more discovery on this issue before it faced Rule 11 sanctions.

Although the report completed by CGMC certainly did not provide evidence that the IWF Machine was manufactured by CGMC, it also did not - as the defendants contend - provide "hard evidence that Defendants had not engaged in reverse palming."  Defs.' Reply Br. at p. 10 [Doc. No. 55].  CGMC contends that it was entitled to additional discovery to determine whether the machine was its own, and the court agrees with this statement.  Rule 11 prohibits CGMC

from advocating a contention for which it lacks evidentiary support, but CGMC is allowed a "reasonable opportunity" to discover this support before it faces liability under Rule 11. In this case, the end of the discovery period was over a month away when the defendants filed their motion for sanctions; accordingly, the court concludes that CGMC had not yet had an adequate opportunity to explore these claims. Thus, the court DENIES the defendants' motion to the extent that it seeks to impose sanctions for CGMC's failure to withdraw its claims at an earlier date.

**C.** **Summary**

For the reasons set forth above, the court GRANTS in part and DENIES in part the defendants' motion for Rule 11 sanctions. The court GRANTS the defendants' motion to the extent that it seeks attorneys' fees from CGMC's counsel for expenses incurred in filing its Rule 11 motion to address CGMC's blatant misrepresentation of O.C.G.A. § 10-1-451. The court DENIES the defendants' motion to the extent that it seeks sanctions for CGMC's failure to withdraw its reverse palming off claims after its examination of the machine.

**V.   CGMC's Motion to Compel the Defendants to Comply with this Court's November 7, 2008, Order or, in the alternative, Motion for Reconsideration and Motion to Stay Execution of the Court's Order [Doc. No. 31]**

On November 24, 2008, CGMC filed a motion to compel defendants to comply with this court's November 7, 2008, order or, in the alternative, for reconsideration and a stay of that order. In the November 7, 2008, order [Doc. No. 29], the court ordered CGMC to post a $200,000 bond pursuant to O.C.G.A. § 10-1-451. In its pending motion, CGMC claims that the court explained during a conference call held prior to the issuance of that order "that Plaintiff had the option of either returning Defendants' machine to them, or post [sic] a surety bond of $200,000.00 within 10 days." Pl.'s Br. at p. 1 [Doc. No. 31, Attachment 1]. CGMC claims that it decided to return the machine to the defendants rather than posting the bond, but argues that the defendants would not give CGMC a location for delivery of the machine. For relief, CGMC has moved the court "to Order [sic] Defendants to give Plaintiff the location to which the machine will be returned and to revise this Court's Order to the extent that it requires Plaintiff to post a $200,000.00 surety bond." Pl.'s Br. at 2 [Doc. No. 31]. Alternatively, CGMC argues that "since Plaintiff's decision to give the machine back to Defendants eliminates Defendants' assertion that they are entitled to bond, this Court should vacate its

November 7, 2008 Order or substantially reduce the amount of the surety bond." Id. Finally, "due to the change of circumstances and Defendants' bad faith refusal to give Plaintiff a location to return the machine," CGMC moves the court to "stay execution of its November 7, 2008 Order until it . . . rules on Plaintiff's present motion for reconsideration." Id.

On November 25, 2008, the defendants gave CGMC a destination for the delivery of the machine. Thus, CGMC agrees that the portion of its motion requesting the defendants to provide it with a shipping address is moot. However, it argues that its motion for reconsideration of the November 7, 2008, order is still pending.

The defendants object to CGMC's motion requesting reconsideration of the November 7, 2008, order. First, the defendants claim that the return of the IWF machine is immaterial to CGMC's obligation to post a bond. The defendants argue that the statutorily mandated bond requirement is meant to cover the following expenses in the event that the goods seized were not counterfeit:

> (a) any damages proximately caused to any person having a financial interest in the seized goods by the seizure of goods which are not counterfeit;

> (b) costs incurred in defending against seizure of noncounterfeit goods; and

-26-

> (c) upon a showing that the person causing the seizure to occur acted in bad faith, expenses, including reasonable attorneys' fees, expended in defending against the seizure of any noncounterfeit or noninfringing goods.

Defs.' Resp. Br. at 3 (citing O.C.G.A. § 10-1-451(e)) [Doc. No. 38]. The defendants claim that they will seek damages resulting from the seizure, including damages flowing from the defendants' preparation for and appearance at the trade show from which their machine was seized, lost sales opportunities, and the costs and attorneys' fees incurred by the defendants as a result of the wrongful seizure. Thus, they argue that a bond is needed to insure against these losses.

Second, the defendants, by way of their December 11, 2008, response brief, note that they have not yet received the machine.[8] Thus, the defendants claim that they have "no idea what condition the machine might be in, whether it was damaged by Plaintiff or damaged in transit." Thus, they indicate that the bond is still necessary to insure against any damages to the machine.

The court agrees with the defendants that CGMC is still responsible for posting a $200,000 bond in regard to the machine that it seized. As an initial matter, the court notes that it is unclear whether CGMC ever actually returned the machine. CGMC did

---

[8] At the time of the defendants' response brief, CGMC had informed the defendants that the machine was in transit.

not file a reply brief, and the joint status report filed by the parties does not indicate that the machine was actually returned. However, even if CGMC has returned the machine, it would still be responsible for posting a bond.  The court required CGMC to post a bond pursuant to O.C.G.A. § 10-1-451.  As the defendants correctly point out, this statute provides for a bond that not only insures against damages caused to any person having a financial interest in the seized goods, but also against costs incurred in defending against seizure of noncounterfeit goods and expenses, potentially including reasonable attorneys' fees.  See O.C.G.A. § 10-1-451(e). To date, the defendants have filed multiple briefs with this court indicating that CGMC's seizure of the machine was wrongful and conducted in bad faith.  Accordingly, CGMC's obligation to post a bond would not be obviated by the return of the machine, and CGMC's motion to vacate the November 7, 2008, order is DENIED.  Moreover, in the absence of affirmative evidence that the machine was returned in the same condition in which it was seized, CGMC's motion to reconsider the amount of the bond is likewise DENIED.

In making this ruling, the court notes that CGMC has misconstrued this court's statements on the November 7, 2008, conference call,[9] and has attempted to supplant the written order

_____

[9]    The court notes that it held a conference call in lieu of a formal hearing on the defendants' motion to compel the posting of a bond [Doc. No. 3] to clarify whether CGMC was, as it indicated in

issued after that call with its misconstructions.  That issue aside, the court notes that the order issued after that call is clear: CGMC must post a $200,000 surety bond.  To be sure, the court - favoring agreements between the parties over court-issued directives - gave CGMC ten days to post its bond in the hopes that the parties might reach some type of reconciliation regarding some of the issues in this matter.  However, the parties did not file a joint motion with the court to withdraw the order compelling CGMC to post a bond.  To the contrary, many of the briefs filed by the defendants to date have reinforced the need for a bond.

In light of the court's unambiguous order on this subject, it is inclined to sanction CGMC for its failure to post a bond. However, at this point it will refrain from doing so and will give CGMC one more opportunity to comply with its directive.  CGMC is DIRECTED to post a bond by March 30, 2009.  Any further attempts - by motion or otherwise - to delay the posting of this bond will result in sanctions.

---

its response brief, truly willing to return the machine to the defendants.  During the conference call, CGMC indicated that - rather than returning the machine to the defendants - it hoped to place the machine in a neutral location where it could continue to conduct tests on the paint covering the machine.  The court found that placing the machine in a neutral location where CGMC still had access to it did not constitute "returning the machine."

**VI.  <u>The Defendants' Motion to Compel Complete Interrogatory</u>**
   **<u>Response and Motion for Sanctions [Doc. No. 36]</u>**

   **A.   <u>Overview of the Parties' Briefs</u>**

   The defendants' motion to compel a complete interrogatory response and motion for sanctions revolves around one interrogatory propounded by the defendants.  Specifically, that interrogatory states:

> Interrogatory No. 5: Itemize and describe in detail any and all differences between the A Series Machine and the Qingdao Machine and identify and describe in detail any reports or other documents or tangible items of any nature or sort relating to said studies and investigations.

In response to this interrogatory, CGMC stated:

> Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff directs Defendants to its Report Regarding the Origins and the Manufacture of Defendant Giantway's Machine and the Exhibits attached thereto that Plaintiff filed with the Court on September 23, 2008. (Docket No. 5.)  The report describes in detail the minor superficial differences found by Plaintiff's employees between the A Series Machine and the Qingdao Machine.

   The defendants argue that CGMC's report does not even identify, much less "describe in detail," many of the so characterized "minor superficial differences" between the parties' machines.  Further, the defendants claim that discovery has shown that "there are countless *significant differences* totally omitted from the report." Defs.' Br. at p. 5 [Doc. No. 36, Attachment 1].  The defendants argue that CGMC is acting in intentional bad faith because it has

-30-

refused to supplement its interrogatory response or provide meaningful answers to questions in depositions. Accordingly, the defendants request that the court compel a complete interrogatory response. In addition, the defendants request sanctions in the form of expenses and attorneys' fees in bringing the motion.

In response, CGMC argues that the issues raised in the defendants' motion are mooted by CGMC's recently filed motion for leave to file its second amended complaint because the differences between the two machines are not relevant to the proposed trade dress claims. It argues that a complete response to the defendants' interrogatory would be more appropriate for an expert report under Rule 25 than an interrogatory. CGMC further contends that it is impossible to answer this interrogatory in a truthful manner because each of the 1,400 A series machines was created to unique specifications; thus, there is no standard A series machine to which the IWF machine can be compared.

**B.   Legal Standard**

A party responding to an interrogatory has three options: (1) it can answer the interrogatory;[10] (2) it can object to the interrogatory; or (3) it can answer in part and object in part to an interrogatory. Fed. R. Civ. P. 33(b). If a party answers the

---

[10]   In lieu of an answer, the responder can refer the interrogating party to its business records if the answer may be determined therein. Fed. R. Civ. P. 33(d).

interrogatory, it must do so "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If a party objects to an interrogatory, "the grounds for objecting . . . must be stated with specificity." Fed. R. Civ. P. 33(b)(4). "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Id.

If a party fails to answer an interrogatory or makes an evasive or incomplete answer, the requesting party may move for an order compelling discovery under Rule 37. Fed. R. Civ. P. 37(a)(3). Such a motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

"The party resisting discovery has a 'heavy burden' of showing why discovery should be denied." Williams v. The Art Institute of Atlanta, 1:06-CV-0285-CC/AJB, 2006 U.S. Dist. LEXIS 62585, at *7 (N.D. Ga. Sept. 1, 2006) (quoting Roerhs v. Minnesota Life Insurance Co., 228 F.R.D. 642, 644 (D. Ariz. 2005)). "Once the resisting party meets its burden, the moving party has the burden of showing the information is relevant and necessary." Id. (citing Gober v. City of Leesburg, 197 F.R.D. 519, 521 (M.D. Fla. 2000) and Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp., 233 F.R.D. 678, 680 (M.D. Fla. 2006)).

> If the motion [to compel discovery] is granted -
> or if the disclosure or requested discovery is
> provided after the motion was filed - the court
> must, after giving an opportunity to be heard,
> require the party or deponent whose conduct
> necessitated the motion, the party or attorney
> advising that conduct, or both to pay the movant's
> reasonable expenses incurred in making the motion,
> including attorney's fees [unless] (1) the movant
> filed the motion before attempting in good faith
> to obtain the disclosure or discovery without
> court action; (2) the opposing party's
> nondisclosure, response, or objection was
> substantially justified; or (iii) other
> circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). "Substantially justified means that
reasonable people could differ as to the appropriateness of the
contested action." Maddow v. Procter & Gamble Co., Inc., 107 F.3d
846, 853 (11th Cir. 1997).

## C. <u>Analysis</u>

In this case, the court has given CGMC leave to withdraw all
of its original claims and leave to add a trade dress infringement
claim. Although the defendants argue that interrogatory number five
is necessary to their counterclaims arising from the unlawful
seizure of the IWF machine, the court concludes that it would be
beneficial for both parties to reconsider their requests and
responses in light of the remaining claims before compelling a
response. Thus, the court will not compel a response on the part
of CGMC at this juncture. Instead, the court DIRECTS the parties,
within 20 days of the date of this order, to file with this court

a joint report regarding the status of their pending motions and outstanding discovery requests in light of the claims remaining in this case.   In this report, the parties should discuss whether interrogatory number 5 as currently posed is still relevant.

Although the court will not compel a response at this time, it notes that – had CGMC not amended its complaint – the entry of an order compelling discovery would be appropriate.   It is quite clear to the court, after reviewing the deposition testimony of Scott Grissom, CGMC's Rule 30(b)(6) witness, that the report submitted by CGMC contained far less than a detailed description of the differences between CGMC's machine and the IWF machine.   Indeed, Grissom testified that there were several differences between the A series machine and the IWF machine that were not included in the report.  Dep. of Scott Grissom at 51:8-21; 55:24-56:9 [Doc. No. 37, Ex. B].   Although Grissom testified that such differences were irrelevant and CGMC now argues that it would be impossible to give a truthful answer to this interrogatory and that this interrogatory would be better answered by an expert, CGMC did not object to the interrogatory on these grounds.   Instead, it made no objections to the interrogatory, suggesting that the report contained a full listing and description of all of the differences between the machines.   The court finds that CGMC's failure to disclose these differences in response to the defendants' interrogatory or to make

-34-

timely objections sounds in bad faith, and concludes that CGMC has offered no reason that would substantially justify its incomplete response or lack of timely objection.   Accordingly, the court concludes that the defendants are entitled to an award of their attorneys' fees and expenses incurred in preparing the motion to compel, and GRANTS the defendants' motion in this regard.

## VII. The Defendants' Motion to Compel a Rule 30(b)(6) Deposition and Motion for Sanctions [Doc. No. 37]

### A.    Overview of the Parties' Briefs

In their motion to compel CGMC's Rule 30(b)(6) deposition and motion for sanctions, the defendants argue that Scott Grissom, Costa's President and Rule 30(b)(6) designee, was either unable or unwilling to testify regarding the topics identified in the defendants' notice of deposition.   These topics included:

> (1) the basis for [CGMC's] contentions that the Giantway Machine displayed at the IWF was actually an A Series Machine;
>
> (2) information regarding [CGMC's] study or investigation of the Giantway Machine;
>
> (3) the results of [CGMC's] comparison of the Giantway Machine to the A Series Machine;
>
> (4) any of [CGMC's] communications with third persons regarding products manufactured, distributed, or offered for sale by the defendants;
>
> (5) sales of [CGMC's] A series machines after the IWF; and

>           (6) any information requested in the
>           Interrogatories served on Costa.

Defs.' Resp. Br. at p. 2 [Doc. No. 37, Attachment 1]. After approximately six hours and nineteen minutes of Grissom's deposition, the defendants suspended the deposition, claiming that Grissom's testimony was insufficient because of his lack of preparation. The defendants requested dates to continue the deposition, but CGMC refused to honor such requests absent a court order. Hence, the defendants filed this motion, seeking an order compelling CGMC to provide a prepared witness at a re-take of the aborted deposition and sanctioning CGMC by awarding the defendants their reasonable attorneys' fees and expenses associated with the suspended deposition and preparation for the re-take.

In response, CGMC first argues that it should not be sanctioned for Grissom's inadequacies in the deposition because he prepared for the deposition, but may not have fully understood what would be required of him. It argues that Grissom spent four hours with counsel preparing for his deposition, and argues that it should not be liable for producing a nervous or forgetful Rule 30(b)(6) witness. Moreover, it claims that if the defendants had identified the areas in inquiry that Grissom did not reasonably address, it would have worked with defendants' counsel to fill in the gaps. CGMC further argues that defendants' counsel "missed the issue" in the majority of his questions because the differences between the

parties' machines was irrelevant since there is no A Series machine prototype. It claims that because Grissom testified about what may identify the source of the defendants' machine, he was adequately prepared.

In addition to its arguments that Grissom adequately prepared for the deposition, CGMC claims that the issues raised in the defendants' motion are moot. Specifically, CGMC claims that on December 16, 2008, a week and a half after the defendants filed their motions to compel, it sent a letter to the defendants making it clear that it intended to withdraw the claims that served as the basis for many of the topics that the defendants intended to inquire about at the Rule 30(b)(6) deposition. In addition, CGMC claims that it made it clear that it would agree to continue the Rule 30(b)(6) deposition for 41 minutes.[11] In return, CGMC asked that the defendants withdraw both discovery motions and their opposition to CGMC amending its complaint, believing that the second amended complaint would moot the discovery issues as they were framed by the defendants. It claims that the defendants' refusal to accept their

---

[11]    CGMC objected to providing an entirely new 30(b)(6) deposition on the identified subjects; however, it indicated that it would negotiate additional time for the defendants to take a 30(b)(6) deposition of the proposed trade dress infringement claims.

offer of compromise indicates that the "Defendants are more interested in concocting a discovery dispute than taking discovery." Pl.'s Resp. Br. at p. 11 [Doc. No. 44].

**B.    Legal Standard**

Federal Rule of Civil Procedure 30(b)(6) states:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. ***The persons designated must testify about information known or reasonably available to the organization.*** This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

(emphasis added). The official comments to Rule 30(b)(6) state that it was instituted to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." Rule 30(b)(6) Advisory Committee Notes on 1970 Amendments.

Because Rule 30(b)(6) allows one or more individuals to testify about information known or reasonably available to the corporation, a 30(b)(6) deponent has a responsibility to prepare for the

deposition.  As the Middle District of Georgia articulated:

> Concomitant with a corporation's duty to produce
> a responsive witness is its duty to prepare the
> witness so that [he or she] may give complete,
> knowledgeable and binding answers on behalf of the
> corporation.  A corporate designee must testify
> beyond matters personally known to the designee or
> to matters which that designee was personally
> involved.  This means that the designee's
> testimony must encompass facts within the
> corporation's knowledge . . . its subjective
> beliefs and opinions and its interpretation of
> documents and events.  Upon notification of a
> 30(b)(6) deposition, a corporation cannot take a
> laissez faire approach to the inquiry. That is,
> producing a designee and seeing what he has to say
> or what he can cover. A party does not meet his
> obligations under Rule 26 or 30(b)(6) by
> figuratively throwing up its hands in a gesture of
> helplessness.  If the originally designated
> spokesman for the corporation lacks knowledge in
> the identified areas of inquiry, that does not
> become the inquiring party's problem, but
> demonstrates the responding party's failure of
> duty.

Otero v. Vito, No. 5:04-cv-211 (DF), 2006 U.S. Dist. LEXIS 88464,

at *7-8 (M.D. Ga. Dec. 7, 2006) (internal citations and punctuation

omitted).

Several courts have concluded that when a Rule 30(b)(6)

designee does not prepare for a deposition, he has failed to appear

for purposes of Federal Rule of Civil Procedure 37(d).  Id. at *6

(finding that a 30(b)(6) deponent who attended a deposition but took

a "laissez-faire attitude toward preparation" failed to "appear" for

over half of the areas of inquiry noticed by the plaintiff) (citing

Black Horse Lane Associations, L.P. v. Dow Chemical Corp., 228 F.3d

275, 302 (3d Cir. 2000); <u>Starlight International, Inc. v. Herlihy</u>, 186 F.R.D. 626, 639 (D. Kan. 1999); <u>United States v. Taylor</u>, 166 F.R.D. 356, 363 (M.D.N.C. 1996); <u>Resolution Trust Corp. v. S. Union Corp.</u>, 985 F.2d 196 (5th Cir. 1993)).   Rule 37(d) authorizes sanctions if a properly noticed deponent fails to appear, and clarifies that such a failure is not excused on the ground that the discovery sought was objectionable, unless the party failing act sought a protective order.  If a party failed to appear for purposes of Rule 37, the court may levy sanctions on that party.  In addition to or in lieu of these sanctions, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(d)(3).

### C.    <u>Analysis</u>

The court has reviewed the parties' briefs, the deposition transcript in full, and the relevant law, and concludes that this is a case where sanctions are appropriate.  It is clear to the court that Grissom did nothing of substance to prepare for his deposition.[12]  Indeed, he even testified that all he did to prepare was review the deposition notice and its exhibits.  <u>See</u> Grissom Dep.

---

[12]    The court will discuss CGMC's counsel's assertion that Grissom prepared for four hours for the deposition below.

at 4:25-5:12 [Doc. No. 37, Ex. B].  Mr. Grissom's lack of preparation was evident throughout his deposition.  For example, although Mr. Grissom was clearly on notice that he needed to testify regarding the study that CGMC conducted on the IWF machine, he and his attorney clarified for the court that he did not review the report addressing the study's results prior to his deposition.  The following excerpt of his deposition testimony is illustrative:

> A:  I'm saying that I don't know what's in the report.  I do not remember.  It's been a month, over a month or right at a month.
>
> Q:  I think you said that you studied it preparing for today, didn't you?
>
>   MR. ICHTER:  No, he didn't say that.  He said he looked at the 30(b)(6) notice.
>
>   MR. WHEAT:  You're correct.  I apologize. He did say he didn't do any studying preparing for today.
>
>   Mr. ICHTER:  That's right.

Id. at 72:14-24.  Because Grissom did not prepare for his deposition, the transcript is replete with answers of "I don't know" and "I don't remember."  The court agrees with CGMC that "producing a nervous or forgetful 30(b)(6) witness is not a basis for sanctions."  However, where a party produces a Rule 30(b)(6) witness who is nervous or forgetful because he completely failed to prepare for the deposition, sanctions will lie.

Although Grissom was able to answer some of the defendants' questions, the court finds that his overall lack of preparation made the deposition a waste of time for both parties. Accordingly, the court concludes that Grissom failed to adequately "appear," and the court will GRANT the defendants' motion for sanctions in the form of attorneys' fees for time spent at and in preparation for the deposition and for time spent preparing for and filing the motion to compel. Moreover, the court GRANTS the defendants' motion to the extent that it seeks to continue the Rule 30(b)(6) motion. Because the original Rule 30(b)(6) designee was completely unprepared and because CGMC has amended the nature of its claims, this court will allow this continued deposition to last for one day of seven hours, as set forth in Federal Rule of Civil Procedure 30(d)(1) unless the defendants indicate by motion that more time is necessary.

Clearly, the attorneys' fees award in regard to this motion should be borne not by CGMC, but rather by its counsel, whose underhanded tactics in regard to this litigation have been no less than shocking. In CGMC's response to the defendants' motion to compel a Rule 30(b)(6) deposition, Mr. Ichter made the following testimony by way of footnote:

> As lead Attorney of record for CGMC and the signatory of this Response, I hereby confirm and certify that I spent four hours with Mr. Grissom on October 15, 2008 preparing him for his 30(b)(6) deposition. Mr. Grissom and I reviewed Defendant's 30(b)(6) deposition notice, discovery

-42-

requests, CGMC's Report and possible questions that Defense counsel may ask Mr. Grissom during his deposition. As lead counsel, I made a note during Mr. Grissom's deposition to correct his statement that other than reviewing Defendants' 30(b)(6) notice, he had not prepared for his deposition. However, during the deposition I was substituted by co-counsel to attend a previously scheduled conference. It was my intention to correct the record; however, Defense counsel abruptly terminated the deposition before the record could be corrected. The fact that Defense counsel has made a mountain out of this molehill shows the extent to which Defendants are pushing to avoid trying this case on the merits -- preferring instead to focus on contrived discovery disputes.

Pl.'s Resp. Br. at 8 [Doc. No. 44]. In light of Mr. Ichter's comments on the record during the deposition representing that Grissom did not look at the report, the court has two options. First, it could find Mr. Ichter's "certification" cited above to be completely disingenuous. On the other hand, the court could find that at least portions of Mr. Icther's statement in GCMC's response brief are accurate, but would then be faced with the conclusion that he perpetuated perjury when he adamantly reinforced Grissom's representation in the deposition that his only preparation for the deposition was a review of the deposition notice. Under either scenario, the court is forced to conclude that Mr. Ichter's actions violate the integrity of the judicial system, which the district court has inherent power to protect. See Chemtall Inc. v. Citi-Chem, Inc., 992 F. Supp. 1390, 1408 (S.D. Ga. 1998). As a result

of his actions, Mr. Ichter is hereby DIRECTED to pay the attorneys'
fees granted to the defendants in regard to this motion.

**VIII.**    <u>**Summary**</u>

For the reasons set forth above, this court:

(1)  DENIES CGMC's ex parte request for a hearing on all
pending motions;

(2)  GRANTS in part and DENIES in part CGMC's motions to amend
its complaint [Doc. Nos. 16 and 43].  The court GRANTS CGMC's
motions to amend its complaint to the extent that they seek to add
CL as a plaintiff, to withdraw counts I, II, III, and IV from CGMC's
original complaint, and to assert a federal trade dress infringement
claim.  The court DENIES CGMC's motion to amend to the extent that
it seeks to transform count II from a Uniform Deceptive Trade
Practices Act claim premised on reverse palming off to a Uniform
Deceptive Trade Practices Act claim premised on trade dress
infringement.

CGMC is DIRECTED to file an amended complaint reflecting this
order no later than March 30, 2009.

(3)  GRANTS in part and DENIES in part the defendants' motion
for Rule 11 sanctions [Doc. No. 41].  The court GRANTS the
defendants' motion to the extent that it seeks attorneys' fees from
CGMC's counsel for filing this motion to address CGMC's blatant
misrepresentation of O.C.G.A. § 10-1-451.  The court DENIES the

-44-

defendants' motion to the extent that it seeks sanctions for CGMC's failure to withdraw its reverse palming off claims after its examination of the machine.

(4)  DISMISSES AS MOOT in part and DENIES in part CGMC's motion to compel the defendants to comply with this court's November 7, 2008, order or, in the alternative, motion for reconsideration and motion to stay execution of the court's order [Doc. No. 31].  The court DISMISSES AS MOOT CGMC's motion to compel the defendants to provide it with a shipping address.  The court DENIES CGMC's motion to vacate the November 7, 2008, order.  The court also DENIES CGMC's motion to reduce the amount of the bond that it is required to post.  CGMC is DIRECTED to post a bond in the amount of $200,000 no later than March 30, 2009.  If CGMC fails to post a bond by this date, this court will immediately impose sanctions on CGMC.

(5)  GRANTS in part and DENIES in part the defendants' motion to compel an interrogatory response and motion for sanctions [Doc. No. 36].  The court concludes that if CGMC had not amended its complaint, the entry of an order compelling discovery would be appropriate.  Thus, it GRANTS the defendants' motion in that it will require CGMC to reimburse them for their attorneys' fees and expenses incurred in preparing the motion to compel.  The court, however, will not compel CGMC to provide a complete interrogatory response at this time because it concludes that it would be

beneficial for both parties to reconsider their discovery requests and responses in light of the remaining claims before compelling a response.

(6) GRANTS the defendants' motion for sanctions in the form of attorneys' fees and costs for time spent at and in preparation for the deposition and for time spent preparing for and filing the motion to compel. The court DIRECTS CGMC's counsel to pay these fees and costs.

The court has awarded various fees and expenses to the defendants. Therefore, the defendants are DIRECTED to file with this court affidavits and supporting documentation establishing those reasonable fees within 20 days of the date of this order. These affidavits should differentiate between the various awards. In other words, there should be an affidavit regarding the Rule 11 sanctions, an affidavit regarding the sanctions in regard to the interrogatory response, and an affidavit in regard to the Rule 30(b)(6) deposition. CGMC's counsel will then have 10 days to challenge the reasonableness of the fees requested, and the defendants will have 10 days after that to reply to any such response.

The court is cognizant of the multitude of discovery motions remaining on its docket. However, in light of the significant amendments to the complaint, the court will not review or rule on

-46-

these motions until the parties have had an opportunity to reevaluate their discovery requests and contentions. As noted above, the court DIRECTS the parties, within 20 days of the date of this order, to file with this court a joint report regarding the status of their pending motions and outstanding discovery requests in light of the amendments made to date. If the parties find that the majority of their pending discovery is mooted by this order, they are DIRECTED to propose to the court a discovery schedule that will allow them an adequate opportunity to address the newly amended claims.

As noted in footnote 1, the clerk is DIRECTED to correct the docket to identify Doc. No. 41 as a Motion and Memorandum of Law for Rule 11 sanctions, to identify Doc. No. 48 as the response to this motion, and to identify Doc. No. 55 as the reply to this motion.

So ordered, this 24th day of March, 2009.


                              /s/ Charles A. Pannell, Jr.
                              CHARLES A. PANNELL, JR.
                              United States District Judge




                                    -47-