IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COSTA & GRISSOM
MACHINERY COMPANY, INC.
and COSTA LEVIGATRICI,
S.p.A.,

            Plaintiffs,

      v.

QINGDAO GIANTWAY
MACHINERY CO., LTD. and
LOBO MACHINERY
CORPORATION,

           Defendants.

CIVIL ACTION FILE

NO. 1:08-CV-2948-CAP-WEJ

**FINAL REPORT AND RECOMMENDATION**

    The undersigned United States Magistrate Judge, acting as Special Master,

provides the District Court with the following Final Report and Recommendation.

**I.      BACKGROUND**

    Plaintiff Costa & Grissom Machinery Company, Inc. ("CGMC") is a North

Carolina company that markets a wide-belt sander "A" series machine produced by

plaintiff Costa Levigatrici S.p.A. ("CL"), an Italian company.  In August 2008,

CGMC was setting up an exhibit for its sander at the annual International

Woodworking Fair ("IWF"), when its employees saw a display by defendant

Qingdao Giantway Machinery Co., Ltd. ("Giantway"), a Chinese company, that included a machine (the "IWF machine") with defendant Lobo Machinery Corporation's ("Lobo") logo on its front panel.

On August 21, 2008, CGMC, represented by attorneys from the law firm of Adorno & Yoss LLC (including partners Cary Ichter and Guy H. Weiss), filed its Complaint and Request for a Temporary Restraining Order, Interlocutory Injunction and Seizure of Conterfeit [sic] Products [1-2] in the Superior Court of Fulton County. CGMC alleged reverse palming off, claiming that defendants removed CGMC and CL's logos from one of their machines and replaced them with Lobo's labels. The next day, a Judge of the Superior Court held a TRO hearing and ordered Giantway to surrender the IWF machine to CGMC and immediately deliver sales documents generated during the IWF. The court instructed CGMC to report its findings concerning the source and origin of the machine at a scheduled preliminary injunction hearing on September 22, 2008.

On September 19, 2008, defendants removed the case to this Court, where it was assigned to United States District Judge Charles A. Pannell, Jr. As explained by Judge Pannell, the case devolved into a "contentious motions practice" after he directed plaintiffs to post a bond on November 7, 2008 [29]. (Order [154] of Dec.

2

2, 2009, at 5.)  Judge Pannell found that CGMC and its former counsel had "acted willfully in bad faith, vexatiously, wantonly, and for oppressive reasons." (Id. at 41.) Specifically, they engaged in egregious behavior, acted dishonestly, and used deceptive, underhanded litigation tactics by intentionally misrepresenting the law, failing to answer an interrogatory and making misrepresentations in its responses, failing to prepare for a 30(b)(6) deposition or dishonestly creating that impression, giving evasive and contradictory deposition testimony, failing to turn over documents in a timely fashion, and needlessly prolonging this litigation and increasing its costs.  (Order [80] of Mar. 24, 2009, at 22, 34-35, 40-42; Order of Dec. 2, 2009, at 29-32, 36-42.)

Given this misconduct, in his Order of March 24, 2009, Judge Pannell awarded defendants their reasonable attorneys' fees and expenses for filing their Motion to Compel Complete Interrogatory Response [36];[1] their reasonable attorneys' fees and costs for filing their Motion for Sanctions and to Compel 30(b)(6) Deposition [37] (including time spent at, and in preparation for, the deposition of

_____

[1] CGMC must pay fees and expenses incurred by defendants in preparing that Motion [36].  (Order of Mar. 24, 2009, at 45.)

Scott Grissom, president of CGMC);[2] and their reasonable attorneys' fees for filing part of their Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 [41] (the portion related to CGMC's misrepresentation of O.C.G.A. § 10-1-451).[3] (Order of Mar. 24, 2009.)

In his follow-up Order of December 2, 2009, Judge Pannell awarded defendants attorneys' fees and costs for all expenses incurred from inception of this case through the filing of the second Verified Amended Complaint [83] on March 30, 2009 (excluding fees associated with that pleading), plus expenses incurred in relation to defendants' Motion to Dismiss [95] and Motion for Partial Summary Judgment [96]. (Order of Dec. 2, 2009, at 42.)[4] The District Court directed that all fees assessed pursuant to the Order of December 2, 2009, be payable jointly and severally by CGMC and its former "attorneys of record during the time period

---

[2] One of plaintiffs' former attorneys, Cary Ichter, is responsible for defendants' attorneys' fees associated with that Motion [37]. (Order of Mar. 24, 2009, at 44.)

[3] CGMC's former attorneys of record must pay fees incurred by defendants in filing the portion of the Motion [41] related to CGMC's misrepresentations. (Order of Mar. 24, 2009, at 22, 46.)

[4] This recommendation includes attorneys' fees associated with defendants' Motion to Stay Discovery [97], because it directly relates to their Motion to Dismiss [95].

4

between the inception of this lawsuit and the filing of the second amended complaint on March 30, 2009." (Order of Dec. 2, 2009, at 46.)[5]  Judge Pannell also indicated that he did not intend a double recovery of the fees and costs awarded under his Order of March 24, 2009, and directed that those sanctions be deducted from the amount assessed pursuant to his Order of December 2, 2009. (Id. at 43, 46 n.6.)

Pursuant to Judge Pannell's Orders and this Court's Order [156] of December 9, 2009, defense counsel filed declarations and supporting documentation regarding the amount sought in attorneys' fees, costs, and expenses. Plaintiffs and their former

---

[5] Adorno & Yoss partner Guy H. Weiss signed CGMC's Verified Complaint, which also bore the typed names of his partner, Cary Ichter, and their associate attorney, Adriana Midence. (See Notice of Removal [1] Ex. 1 [1-2] at 11.) Early in the litigation, associate attorney R. Scott Griffin replaced Ms. Midence on the pleadings. (See, e.g., Pls.' Combined Resp. in Opp. to Defs.' Mots. to Compel [44].) Adorno & Yoss partner Marlo Orlin-Leach entered an appearance for plaintiffs on August 21, 2009 [139].  Messrs. Ichter, Weiss, and Griffin, the law firm of Adorno & Yoss, and Ms. Midence (now associated with Elarbee Thompson Sapp & Wilson), filed a "Certificate of Consent to Withdraw" as counsel of record [147] on September 15, 2009. Judge Pannell denied that consent motion, but noted that under the Local Rules an order of the Court was unnecessary for parties to obtain and substitute counsel. (See Order of Dec. 2, 2009, at 48-49.)  Before Judge Pannell entered his Order of December 2, 2009, Mr. Ichter left Adorno & Yoss to form Ichter Thomas LLC. (See Adorno & Yoss Br. Opp'n [163] 2; Ichter's Resp. to Supp. Decl. [165] 2 n.1.)  The undersigned concludes that the two responsible Adorno & Yoss partners during the relevant time period were Messrs. Ichter and Weiss.

5

counsel have responded and defendants have replied. Thus, this matter is now ripe for decision.

In the discussion that follows, the undersigned examines the law governing an award of attorneys' fees (Part II), discusses the prevailing Atlanta market rates (Part III), and makes recommendations concerning the reasonable attorneys' fees, costs, and expenses that should be awarded here (Part IV). In making those recommendations, the undersigned notes that Judge Pannell's Orders sometimes award reasonable attorneys' fees and costs, reasonable attorneys' fees and expenses, reasonable attorneys' fees and costs for all expenses incurred, or just reasonable attorneys' fees. The undersigned assumes, however, given the tone of those Orders, that Judge Pannell intended to award defendants the full range of reimbursement – all attorneys' fees, costs, and expenses.[6]

---

[6] This Court's Order [175] of January 25, 2010, resolved any ambiguity regarding the time frame for which fees may be awarded pursuant to Judge Pannell's Order of December 2, 2009. As stated therein, there is no recovery for fees incurred after March 30, 2009, except for those associated with the Motion to Dismiss [95] and Motion for Partial Summary Judgment [96]. Id.

6

## II.    **GOVERNING LEGAL PRINCIPLES**

### A.    **The Lodestar Analysis**

Under the "American rule," each party pays its own attorneys' fees. Alyeska

Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 245, 95 S. Ct. 1612, 1615

(1975).  One exception to that rule is a fee award against a party who acted in bad

faith.  Id.  Pursuant to a court's inherent power to supervise and control proceedings,

it may award reasonable attorneys' fees when a party has "acted in bad faith,

vexatiously, wantonly, or for oppressive reasons."  Chambers v. NASCO, Inc., 501

U.S. 32, 45-46, 111 S. Ct. 2123, 2133 (1991) (internal quotations omitted) (quoting

Alyeska, 421 U.S. at 258-59, 95 S. Ct. at 1622-23 ); see also F.D. Rich Co. v. United

States ex rel. Indus. Lumber Co., 417 U.S. 116, 129, 94 S. Ct. 2157, 2165 (1974).

Such activity may be found "not only in the actions that led to the lawsuit, but also

in the conduct of the litigation," Hall v. Cole, 412 U.S. 1, 15, 93 S. Ct. 1943, 1951

(1973), including practicing a fraud upon the court and delaying or disrupting the

litigation.  Chambers, 501 U.S. at 46, 111 S. Ct. at 2133.  Here, Judge Pannell found

that CGMC and its former counsel engaged in such behavior and exercised the

Court's inherent power to sanction them.

7

In the Eleventh Circuit, the reasonableness of attorneys' fees is assessed using the lodestar analysis as set forth in Norman v. Housing Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). The analysis is the product of a reasonable hourly rate times the number of hours reasonably expended. City of Burlington v. Dague, 505 U.S. 557, 559, 112 S. Ct. 2638, 2640 (1992). The following twelve factors should be considered when determining what constitutes a reasonable rate and amount of hours:[7]

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Bivens v. Wrap It Up, Inc., 548 F.3d 1348, 1350 n.2 (11th Cir. 2008) (per curiam); Barker v. Niles Bolton Assocs., Inc., 316 F. App'x 933, 944 (11th Cir. 2009).

---

[7] Because the reason for fee-shifting in this case is punitive, serving the dual purpose of vindicating judicial authority and making defendants whole for expenses caused by the actions of CGMC and its former attorneys of record, all twelve factors may not be applicable. See Chambers, 501 U.S. at 46, 53-54, 111 S. Ct. at 2133, 2137.

8

Moreover, the Eleventh Circuit defines a reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299 (citing Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984); see also Smith v. Atlanta Postal Credit Union, No. 09-12060, 2009 WL 3073211, at *2 (11th Cir. Sept. 28, 2009) (per curiam) (same). The fee applicant bears the burden of producing evidence that the requested rate comports with prevailing market rates. Norman, 836 F.2d at 1299. The applicant attorney's customary billing rate for fee paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000). At a minimum, such evidence should be more than the affidavit of the billing attorney, and must speak to rates billed and paid in similar lawsuits. Norman, 836 F.2d at 1299.[8] However, the

---

[8] Cary Ichter asserts that defense counsel must also show that their clients actually paid the bills which it seeks to recover. (See Ichter's Resp. to Supp. Decl. [165] 25-27.) The undersigned is aware of no authority supporting that assertion. Instead, the case he cites, Waschak v. Acuity Brands, Inc., No. 1:07-CV-3121-TWT, 2009 WL 2461038, at *7 (N.D. Ga. Aug. 6, 2009), mentions the rule stated in the sentence preceding this note – the evidence must speak to rates billed and paid in similar lawsuits.

AO 72A
(Rev.8/82)

Court is itself an expert on reasonable fees and may make the lodestar award on its own expertise where documentation is inadequate. Id. at 1303.

Likewise, the Court must exercise its discretion to adjust hours claimed to exclude time for excessive, redundant,[9] or unnecessary work on a given task. Norman, 836 F.2d 1301-02; see also Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939 (1983) (holding that court should exclude from fee calculation hours not reasonably expended). The Court must weigh the hours claimed against its own knowledge and experience of the time required for similar activities. See Allapattah Servs., Inc. v. Exxon Corp, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006). The Eleventh Circuit characterizes hours to be excluded as "those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (citing Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40 (explaining that hours not properly billed to one's client also are not properly billed to one's adversary)). However, "the measure of reasonable hours is determined by the profession's judgment of the time

---

[9] Redundant hours typically occur when more than one attorney represents a client. Norman, 836 F.2d at 1301-02. Under those circumstances, multiple attorneys may be compensated if they are not unreasonably doing the same work and are each being compensated for his or her distinct contribution. Id. at 1302.

that may be conscionably billed and not the least time in which it might theoretically have been done." Norman, 836 F.2d at 1306. The Court must be precise when excluding hours. Id. at 1301.

## B.    Components of a Fee Application

In Norman, the Eleventh Circuit provides the following guidance on submission of a fee application:

> As the Supreme Court said in Hensley, "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S. Ct. at 1941. The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. Id. As indicated earlier, fee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. Hensley, 461 U.S. at 437 n.12, 103 S. Ct. at 1941 n. 2; NAACP v. City of Evergreen, 812 F.2d [1332, 1337 (11th Cir. 1987)]. A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

Norman, 836 F.2d at 1303. A party opposing a fee application must submit specific and reasonably precise objections and proof. ACLU of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999); see also Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th

11

Cir. 1996) (per curiam) (any objections to the hours claimed must be voiced with exactitude).

The fee applications submitted by defense counsel here generally comply with these requirements (with one exception noted infra). Defense counsel maintained records sufficient to show the time spent on the various motions and responses, and the general subject matter of the time expenditures were set out with sufficient particularity so that the undersigned could assess the time claimed for each activity.[10] Moreover, defense counsel submitted a helpful summary, grouping the time entries by the nature of the activity or stage of the case. Thus, the Court had sufficient documentation from which to work. Likewise, the parties and attorneys opposing the fee application submitted specific and reasonably precise proof and objections.

---

[10] Adorno & Yoss assert that defense counsel's fee applications contain numerous block billing entries, making it difficult to ascertain whether the time spent on tasks is reasonable. (Adorno & Yoss Br. Opp'n [163] 25-26.) The undersigned disagrees. In general, the various declarations, summaries, and annotated billing records allow the undersigned to ascertain whether time spent on various activities was reasonable.

12

III.    **PREVAILING ATLANTA MARKET RATES**

A.    **Market Rate Evidence Submitted by Defense Counsel**

Defense counsel seeks the following hourly rates for their timekeepers' work:

|                   | 2008             | 2009             |
| ----------------- | ---------------- | ---------------- |
| Partners          | $315 to $405     | $400 to $450     |
| Of Counsel        | $275 to $315     | $280             |
| Associates        | $163 to $250     | $180 to $260     |
| Paralegals        | $140             | $120 to $150     |
| Document Clerks   | $90              | $95              |
| Library Assistant |                  | $25              |

(See Suppl. Andersen Decl. [157] Exs. 3-A [157-4] & 3-B [157-5].)

Multiple declarations by Donald R. Andersen and Jack A. Wheat (defendants' lead counsel) state that their hourly rate requests "are compatible with that charged by other attorneys of similar experience in this area for complex, technical litigation." (See, e.g., Andersen Decl. [85-2] ¶ 4; Andersen Decl. [85-4] ¶ 4; Andersen Decl. [119] ¶ 4; Supp. Andersen Decl. [157] ¶ 5; Wheat Decl. [85-3] ¶ 4; Wheat Decl. [85-5] ¶ 4; and Wheat Decl. [120] ¶ 4.) However, those assertions do not establish that defense counsel's requested rates are reasonable. See Norman, 836 F.2d at 1299 (noting that, at minimum, evidence should be more than affidavit of

13

billing attorney). Likewise, the declaration of Douglas D. Salyers [98-4], a partner at Troutman Sanders LLP, regarding his attorneys' fee request in a 2005 patent case is insufficient because it does not discuss hourly billing rates for various timekeepers in that litigation or prevailing market rates in Atlanta. (See generally Salyers Decl.) Plaintiffs and their former counsel, however, offer no affidavits in opposition.

Defendants also submit the American Intellectual Property Law ("AIPLA") Report of the Economic Survey for 2007 [98-3] and 2009 [157-7]. Those surveys provide general billing rate ranges for partners and associates focusing on intellectual property law in the metropolitan southeast, and ranges for the cost of intellectual property litigation in that area.[11] However, they do not identify rates billed and paid in similar lawsuits in the Atlanta legal market, or identify rates for paralegals and other personnel. Nevertheless, the Court examines those exhibits.

---

[11] The AIPLA 2009 survey of trademark litigation costs indicates that, for cases worth less than $1 million, the 2008 average cost through discovery for trademark infringement litigation in the metropolitan southeast was $239,000 with the most expensive cases (third-quartile) costing $313,000. (Supp. Andersen Decl. [157] Ex. 3-D [157-7].) For cases worth between $1 million and $25 million, the average cost was $430,000 through discovery, with the most expensive cases costing $625,000. (Id.)

14

According to the AIPLA surveys, attorneys focusing on intellectual property law in the metropolitan southeast in 2006 and 2008 billed clients per hour on average and at a premium[12] as follows:

|  | 2006 | 2008 |
|---|---|---|
| Partners | $381 (avg.), $435 (prem.) | $442 (avg.), $513 (prem.) |
| Associates | $246 (avg.), $291 (prem.) | $329 (avg.), $400 (prem.) |

(Defs.' Reply [98] Ex. B [98-3]; Supp. Andersen Decl. [157] Ex. 3-D [157-7].)

## B.    Reasonable Rates for Timekeepers in This Litigation

The Court must rely on its own expertise in determining reasonable hourly rates for defense counsel's timekeepers (ranging from clerks and paralegals to partners), because the above evidence submitted by defendants is inadequate to establish the prevailing market rate in Atlanta for similar services. See Norman, 836 F.2d at 1303 ("Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has the power to make such an award without the need of further pleadings or an evidentiary hearing.") (citations omitted).

---

[12] "Premium" indicates the third quartile billing rate (a value higher than seventy-five percent of reported rates). (See Defs.' Reply [98] Ex. B [98-3]; Supp. Andersen Decl. [157] Ex. 3-D [157-7].)

15

The undersigned is familiar with the prevailing market rates charged by Atlanta lawyers with similar experience to defendants' timekeepers and for similar types of cases. The rates requested by defense counsel are reasonable for intellectual property litigation in this market. See Waschak, 2009 WL 2461038, at *7 (hourly rates sought by plaintiff's counsel found reasonable, given attorney's education and experience, "based upon [the Court's] personal knowledge of what Atlanta lawyers of equal or greater experience charge for their services in civil litigation"). Indeed, the Daily Report's Going Rate survey for intellectual property work shows Atlanta-based partners billing between $310 and $420 per hour in 2007 and 2008; of counsel billing $420 per hour in 2008; an associate billing $180 per hour in 2007; and paralegals billing between $155 and $175 per hour in 2007. Mary Smith Judd, Going Rate, Daily Report, Mar. 16, 2009, available at http://www.dailyreportonline.com/Editorial/DataChannel/GoingRate.asp (subscription required).

As partners with a range of 11 to 39 years of experience, Messrs. Andersen, Wheat, and David W. Nagel may reasonably charge between $315 and $440 per hour for their legal work in this case during 2008 and 2009. Likewise, of counsel Catherine M. Banich and Amy Sullivan Cahill have 14 and 15 years of experience,

16

respectively, and may reasonably charge between $275 and $315 per hour. The associates working on this litigation (Tasha K. Inegbenebor, James R. Michels, Samantha Tzoberi, Christina I. Ryan, Haley M. Dickerson, Melissa C. Hunter, and Lindsay Y. Capps), with a range of experience from one to ten years, reasonably billed between $163 to $260 per hour. Likewise, ranges of $120 to $150 per hour for paralegal time, $90 to $95 per hour for document clerk time, and $25 per hour for librarian time are reasonable for the Atlanta legal market. Moreover, the above rates are similar to those noted in the Daily Report and AIPLA billing rate surveys. The undersigned thus **REPORTS** that, because the 2008 and 2009 prevailing market rates in Atlanta for intellectual property litigation range from $120 to $450 per hour, the rates requested by defense counsel here are reasonable.

## IV.    REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES HERE

### A.    Reasonable Award Pursuant to March 24, 2009 Order

#### 1.    Motion to Compel Complete Interrogatory Response [36]

On December 3, 2008, defendants filed their Motion to Compel Complete Interrogatory Response [36], supported by a twenty-two-page brief [36-2] and six exhibits [36-3 through 37-8]. Their brief summarizes the Complaint, events at the TRO hearing conducted in Fulton County Superior Court (including court-directed

17

discovery and the requirement that CGMC generate a report for the court), and states plaintiffs' initial response to the interrogatory at issue. (Mem. Supp. Defs.' Mot. Compel Complete Interrog. Resp. [36-2] 1-5.) Defendants then compare the report and Mr. Grissom's deposition testimony with plaintiffs' interrogatory response, explaining how the report is misleading and how plaintiffs delayed discovery with their interrogatory response and incomplete deposition testimony. (Id. at 5-19.) Finally, defendants request sanctions, addressing the applicable law and arguing that plaintiffs' actions warrant punishment. (Id. at 19-21.) Plaintiffs filed a Response [44] and defendants submitted a Reply [52].[13]

Defendants seek $25,516.50 in attorneys' fees for 70.6 hours of work (including time spent compiling their related attorneys' fees) associated with their Motion [36]. (Supp. Andersen Decl. Ex. 5-B1 [157-10].)

Plaintiffs argue that defendants' request is unreasonable for the preparation of a brief and reply regarding one simple and direct interrogatory. (Pls.' Br. Opp'n [90] 8.) Plaintiffs complain that the matter was overstaffed and assert that the time spent by Mr. Wheat (a partner) on the briefing was excessive. (Id. at 9-10.) According to

---

[13] Plaintiffs' Response [44] and defendants' Reply [52] address both the Motion to Compel [36] and Motion for Sanctions [37].

18

plaintiffs, the brief repeats information found in the other motions at issue. (Id. at 9.) Adorno & Yoss and Mr. Ichter state similar objections. (Adorno & Yoss Br. Opp'n [163] 16-18; Ichter Resp. Supp. Decl. [165] 13-15.) Plaintiffs also complain that defendants request reimbursement for work outside the scope of the March 24, 2009 Order and for work their counsel performed to prepare the fee application. (Pls.' Br. Opp'n [90] 10-11.) Defendants reply that their briefs required careful review and application of Supreme Court decisions to each of the particular issues in this case. (Defs.' Reply [98] 20-21.) Defendants assert that, where possible, they did not duplicate charges for common written sections, but that each brief was self-contained, addressing a specific issue. (Id. at 22.) Defendants contend that they are entitled to attorneys' fees for preparation of their fee application. (Id. at 25; see also Defs.' Reply [172] 26-27.)

The undersigned has reviewed defense counsel's billing records [157-2] and summary [157-10] of the fees associated with the Motion [36].[14] The following

------

[14] Several billing dates in the summary [157-10] are incorrect: (1) on November 24, 2008, Mr. Wheat billed 1.6 hours (listed as November 25, 2008, in the summary); (2) on January 6, 2009, Mr. Wheat billed 0.25 of an hour (listed as January 7, 2009, in the summary); and (3) on January 19, 2009, Mr. Wheat billed 0.3 of an hour (listed as January 20, 2009, in the summary). (Compare Supp. Andersen Decl. [157] Ex. 1 [157-2], with id. Ex. 5-B1 [157-10].)

19

hours recorded on the summary should be excluded from any award for the reasons noted: 0.3 of an hour billed by Mr. Wheat on December 1, 2008 (not clearly related to the Motion [36]); 0.1 of an hour billed by Mr. Wheat on December 3, 2008 (unreasonable);[15] 0.25 of an hour billed by Mr. Wheat on January 6, 2009 (not clearly related to the Motion [36]); and 0.1 of an hour billed by Mr. Wheat on January 24, 2009 (unreasonable).

Additionally, the following hours reflected in the billing records, but omitted from the summary, should be included in any award because they are associated with the Motion [36] and are reasonable: 0.35 of an hour billed by Mr. Wheat on October 28, 2008; 0.6 of an hour billed by Mr. Wheat on November 6, 2008; and 1.5 hours billed by Mr. Wheat on November 11, 2008.

Including these adjustments, defense counsel billed $25,184.75 for 66.4 hours associated with the Motion [36] and Reply [52]. (App. A at 1.)[16] Additionally, Mr.

---

[15] It was unreasonable for Mr. Wheat to bill defendants 0.1 of an hour on December 3, 2008, and January 24, 2009, to receive and review an email from the Court confirming certain filings; therefore, it is also unreasonable to recover that time from CGMC.

[16] Appendix A hereto includes charts summarizing the hours billed by defense counsel, as adjusted, for each Motion at issue, as well as the undersigned's recommendations.

20

Andersen spent 0.7 of an hour and a paralegal spent 5.2 hours, at a cost of $1,008, compiling related billing records.  (Id.)  The adjusted total is $26,192.75 in fees for 72.3 hours.  (Id.)

The undersigned concludes that the work performed by multiple timekeepers on this matter was not redundant, but that defense counsel spent an excessive amount of time researching and writing the Motion [36].  Although six attorneys worked on the matter, two attorneys, Mr. Wheat (a partner) and Ms. Dickerson (an associate), performed the majority of the work (58.7 hours).  The remaining attorneys billed 7.7 hours consulting with Mr. Wheat and Ms. Dickerson, and reviewing and editing their work – all reasonable contributions.  Likewise, the time spent by Mr. Wheat preparing the combined Reply [52] is reasonable, given that the majority of the brief focuses on the interrogatory dispute and he billed little time to the portion addressing the deposition issues.

Additionally, the undersigned has reviewed the time entries which plaintiffs allege are outside the scope of Judge Pannell's March 24, 2009 Order, and finds them to be related to this Motion [36] and reasonable.  The undersigned also concludes that fees incurred litigating the amount of attorneys' fees associated with the March 24, 2009 Order and compiling defense counsel's billing records are

21

recoverable.  <u>See</u> <u>Johnson v. Univ. Coll. of Univ. Ala. in Birmingham</u>, 706 F.2d
1205, 1207 (11th Cir. 1983) (holding that court may award fees for litigating over
fees).

The undersigned concludes, however, that the number of hours billed (36.1
hours) by Mr. Wheat and Ms. Dickerson researching and briefing the Motion [36],
which represents about four-and-a-half-workdays, is excessive.  Ms. Dickerson spent
7.1 hours determining what research was required and performing that research.  Mr.
Wheat then spent 29 hours preparing the Motion [36].[17]  The undersigned recognizes
that those attorneys summarized the Complaint and the events in superior court,
compared plaintiffs' unsatisfactory interrogatory response to their report and Mr.
Grissom's deposition, and explained how plaintiffs mislead defendants and the Court
and delayed discovery.  However, defendants' brief supporting their Motion [37] to
compel a second deposition was equally complex and similarly structured, but

---

[17] In 2008, Mr. Wheat spent an additional 8.15 hours meeting with co-counsel,
conducting phone conferences, and reviewing Mr. Grissom's deposition in
preparation for writing the Motion [36].  Those hours were reasonable.

22

required only 18.8 hours of research and briefing (representing two-plus workdays) by Ms. Inegbenebor, a senior associate.[18]

Given Mr. Wheat's experience and Ms. Dickerson's limited research role, and based on the undersigned's knowledge and experience of the time required to prepare similar discovery motions, their combined 36.1 hours for research and writing should be reduced by 16.1 hours to 20 hours, representing about two-and-a-half work days. The undersigned recommends assigning those 20 hours on a proportional basis[19] by limiting Ms. Dickerson to 4 hours for research (20 hours x 20 percent) and Mr. Wheat to 16 hours (20 hours x 80 percent) for briefing. Thus, the Court should award Ms. Dickerson 4 hours for her work on the matter in 2008 (a reduction of 3.1 hours), and Mr. Wheat 24.15 hours for his work on the matter in 2008 (a reduction of 13 hours).

In sum, the undersigned **REPORTS** that the reasonable attorneys' fees incurred by defendants in preparing the Motion [36] and the cost of compiling that

---

[18] Ms. Inegbenebor's time does not include reviewing Mr. Grissom's deposition; rather, that work was performed by another associate (Ms. Capps).

[19] As noted above, Mr. Wheat and Ms. Dickerson billed 36.1 hours. The 29 hours billed by Mr. Wheat represent 80% of that total, while the 7.1 hours billed by Ms. Dickerson represent the other 20%.

23

information total $20,323.25 for 56.2 hours.  (App. A at 2.).  As noted above, Judge Pannell ordered that these fees be borne by CGMC.  Accordingly, the undersigned **RECOMMENDS** that CGMC pay $20,323.25 to defendants.

### 2.     <u>Motion for Sanctions and to Compel 30(b)(6) Deposition [37]</u>

Mr. Wheat, a Louisville-based partner with Stites and Harbison PLLC, accompanied by Ms. Tzoberi and Mr. Andersen, deposed Mr. Grissom on October 16, 2008, in Atlanta, Georgia. (Mot. for Sanctions [37] Ex. B [37-4].)  On December 3, 2008, defendants filed their Motion for Sanctions and to Compel 30(b)(6) Deposition [37], supported by a twenty-three-page brief [37-2] and four exhibits [37-3 through 37-6].  Their brief reviews the facts of the case, relevant portions of the TRO hearing conducted in Fulton County Superior Court, applicable law, the report produced by CGMC, actions required of CGMC after the TRO hearing (including production of the report), and parses Mr. Grissom's deposition testimony, identifying deficient responses.   (<u>See generally</u> Mem. Supp. Mot. for Sanctions [37-2].) Plaintiffs filed a Response [44] and defendants submitted a Reply [52].

Defendants seek $24,086.13 in attorneys' fees for 89.2 hours of work associated with the Motion [37], plus $994 for compiling their related attorneys' fees

24

information and $3,176.48 in costs associated with Mr. Grissom's deposition, for a total of $27,262.61.  (Supp. Andersen Decl. Ex. 5-B2 [157-11].)

Plaintiffs argue that defendants' request is unreasonable for the preparation of a "simple" motion to compel. (Pls.' Br. Opp'n [90] 11.)  Plaintiffs complain that six timekeepers worked on the matter and assert that the time spent reviewing and organizing Mr. Grissom's deposition and preparing the brief was excessive. (Id. at 12.)  According to plaintiffs, the brief contains the same information set forth in other briefs prepared by defendants and recites "basic, black-letter" law with little analysis.  (Id.)  Plaintiffs complain that multiple timekeepers prepared for the deposition, while only one attorney took the deposition, and object to time billed by an associate who attended the deposition but did not participate. (Id. at 13.)  Finally, plaintiffs assert that defendants request reimbursement for unrelated work.  (Id.)  Similarly, Adorno & Yoss and Mr. Ichter contest the number of timekeepers assigned to this matter, including the use of a second attorney at the deposition, and defendants' request for associated costs. (Adorno & Yoss Br. Opp'n [163] 9-10, 15, 19-20, 26-27; Ichter Resp. Supp. Decl. [165] 16-17.)  Plaintiffs' former attorneys argue that the work was not complex, but was repetitive of that for other motions. (Adorno & Yoss Br. Opp'n [163] 9-10, 15, 19-20, 26-27, Ex. A [163-2 through 163-

25

6], Ex. B [163-7]; Ichter Resp. Supp. Decl. [165] 17-19.)  Defendants reply that

preparation for the deposition included organizing and studying 400 pages of

photographs and formulating questions relating to deficiencies in plaintiffs' report.

(Defs.' Reply [98] 7.)  Defendants argue that a second attorney (Ms. Tzoberi) was

necessary to assist with Mr. Grissom's deposition and to be available to

communicate with the Court or other Stites and Harbinson attorneys if a discovery

dispute arose.  (Id. at 23.)  Defendants also assert that Mr. Andersen and Ms.

Tzoberi's presence was required in the event that an issue arose requiring familiarity

with local federal practice and procedure (Mr. Wheat is participating in this case pro

hac vice).  (Defs.' Reply [172] 10 & n.1.)

     The undersigned has reviewed defense counsel's billing records [157-2] and

summary [157-11] of the fees and costs associated with Mr. Grissom's deposition.

The following hours recorded on the summary should be excluded from any award

for the reasons noted:  0.3 of an hour billed by Ms. Banich on October 13, 2008

(duplicate entry); 1.3 hours billed by Mr. Wheat on October 14, 2008 (duplicate

entry); 0.6 of an hour billed by Mr. Wheat on November 6, 2008 (no billing record);

26

0.1 of an hour billed by Mr. Wheat on December 3, 2008 (unreasonable);[20] and 0.5 of an hour billed by Mr. Wheat on January 19, 2009 (no billing record).

The following hours and expenses set forth in the billing records, but omitted from the summary, should be included in any award because they are associated with Mr. Grissom's deposition and the Motion [37] and are reasonable:  0.3 of an hour billed by Mr. Wheat on September 15, 2008; 0.3 of an hour billed by Mr. Wheat on October 9, 2008; 0.4 of an hour billed by Mr. Andersen on October 13, 2008; 3.9 hours billed by Mr. Wheat on October 15, 2008; 3.6 hours billed by Mr. Wheat on October 17, 2008; 0.4 of an hour billed by Mr. Andersen on October 21, 2008; 0.5 of an hour billed by Mr. Wheat on January 7, 2009; and $444.89 in expenses incurred by Mr. Wheat on October 21, 2008, for travel to Mr. Grissom's deposition.

Including these adjustments, defense counsel billed $25,786.70 for 90 hours associated with Mr. Grissom's deposition, the Motion [37], and Reply [52].  (App. A at 3.)  Additionally, Mr. Andersen spent 0.7 of an hour and a paralegal spent 5.1 hours, at a cost of $994, compiling related billing records.  (Id.)  Defendants also

---

[20] It was unreasonable for Mr. Wheat to bill defendants 0.1 of an hour to receive and review an email from the Court confirming the filing of the Motion [37]; therefore, it also is unreasonable to impose that cost on Mr. Ichter.

27

spent $3,621.37 for Mr. Wheat to travel to the deposition and for it to be videotaped, transcribed, and copied. (Id.) The adjusted total sought is $30,402.07 for 95.8 hours. (Id.)

The undersigned concludes that, as adjusted above, most of the hours billed by defense counsel are not excessive, redundant, or unnecessary. Plaintiffs mischaracterize defendants' work product as "simple." Rather, defendants were required to sift through court and deposition transcripts, and plaintiffs' technical report, compare Mr. Grissom's deficient deposition testimony with those documents, and argue why the law supports their request for sanctions and a second deposition. Defendants used a more cost-effective associate ($163 hourly rate) to review and organize Mr. Grissom's deposition, and assigned only the briefing to the senior associate ($250 hourly rate). They spent 34.7 hours on the Motion [37], representing approximately two days of preparation and two days of research and writing. This is not an unreasonable amount of time given the technical matter at issue and the multiple comparisons required to explain the deficiencies in Mr. Grissom's testimony.

The largest cost associated with defendants' request is Mr. Wheat's time to prepare for the deposition, travel to Atlanta, and question Mr. Grissom – all

28

reasonable expenses. Defense counsel's use of multiple timekeepers to compile and review 400 pages of photographs in preparation for the deposition also is not unreasonable. That time only represents 12.9 hours; whereas Mr. Wheat's time and that of the associates who reviewed the deposition and prepared the Motion represent 70.5 hours. Moreover, of the 12.9 hours, 9.1 was billed by a paralegal and clerk, showing defense counsel's use of cost effective timekeepers for the required tasks. Additionally, the undersigned has reviewed the time entries which plaintiffs allege are outside the scope of Judge Pannell's March 24, 2009 Order, and finds them to be related to this Motion [37] and reasonable.[21]

However, multiple attorneys were not required for Mr. Grissom's deposition. Ms. Tzoberi did not assist Mr. Wheat in preparing for the deposition and she did not question Mr. Grissom. Rather, it appears that she observed the deposition, but did not contribute to it. Mr. Wheat is an experienced lawyer who did not need the presence of an attorney familiar with practice in the Northern District of Georgia just in case it was needed. Because Ms. Tzoberi's presence was redundant, she may not

_____

[21] The undersigned adjusted defense counsel's summary to exclude the duplicate time entry identified by plaintiffs, and the November 6, 2008 entry for work related to defendants' Motion to Compel Complete Interrogatory Response [36]. (See Pls.' Br. Opp'n [90] 13 n.9, 14.)

reasonably bill 4.8 hours for her attendance and a related follow-up conference. Likewise, Mr. Andersen's presence was unnecessary, as he did not substantively participate in the deposition; thus, it was unreasonable for him to bill 0.4 of an hour to assist Mr. Wheat. Therefore, the Court should award no hours for work performed by Ms. Tzoberi, and award only 2.1 hours for work performed by Mr. Andersen. (App. A at 4.)

In sum, the undersigned **REPORTS** that the reasonable fees and costs to prepare for and conduct Mr. Grissom's deposition, to prepare and file the Motion [37] and Reply [52], and to compile fee information total $29,120.07 for 90.6 hours. (App. A at 4.)  Judge Pannell ordered CGMC's former counsel, Mr. Cary Ichter, to pay these fees and costs.  (See supra note 2.)  Therefore, the undersigned **RECOMMENDS** that Mr. Ichter pay $29,120.07 to defendants.

### 3.    Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 [41]

On December 30, 2008, defendants filed their combined Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 [41] and fifteen-page brief with a Notice of Reliance [42] on a transcript of the August 22, 2008 TRO hearing in Fulton County Superior Court.  Their brief succinctly reviews the relevant facts of the case and portions of the TRO hearing.  (Mot. for Sanctions [41] 1-4.)  Defendants then detail how CGMC

continued to pursue its original claims after the report failed to support its legal theory. (Id. at 5-8.) Defendants also explain how CGMC ignored the requirements of O.C.G.A. § 10-1-451 and wrongfully seized the IWF machine. (Id. at 8-11.) Defendants then compare the representations of CGMC's counsel with the facts available at the time and the requirements of Rule 11. (Id. at 11-14.) Plaintiffs filed a twenty-page Response [48], arguing that defendants "created a procedural quagmire, filing unwarranted motions and refusing to cooperate . . . to limit the issues . . . and reach the merits of the parties' claims." (Id. at 2.) On February 6, 2009, defendants filed a fifteen-page Reply [55] rebutting CGMC's allegations and detailing the conduct of CGMC's counsel.

Defendants seek $15,774.56 in attorneys' fees for 62.95 hours of work associated with their Motion [41] (which includes time spent compiling their attorneys' fees). (Supp. Andersen Decl. Ex. 5-B3 [157-12].)

Plaintiffs argue that defendants used multiple timekeepers to produce the Motion [41] and Reply [55] and spent an unreasonable amount of time to produce both documents. (Pls.' Br. Opp'n [90] 14-15.) Plaintiffs complain that the documents are not complex, composed mainly of string citations, basic patent and copyright law, and duplicate information set forth in defendants' other motions. (Id.)

31

Adorno & Yoss and Mr. Ichter reiterate those objections. (Adorno & Yoss Br. Opp'n [163] 2; Ichter Resp. Supp. Decl. [165] 19-20.) Adorno & Yoss also object to the number of timekeepers working on the Motion [41] and the amount of time spent preparing the supporting brief and Reply [55]. (Adorno & Yoss Br. Opp'n [163] 21.) Defendants reply that their Motion [41] ultimately succeeded in persuading CGMC to withdraw its reverse passing off claims. (Defs.' Reply [98] 10-11.) Defendants argue that they used common sections where possible, and did not charge for duplicate work. (Id. at 22.) They also assert that multiple case citations were used to demonstrate the strength of their position. (Id. at 22-23.) Defendants also contend that Messrs. Wheat and Andersen provided factual information obtained through discovery to the associates researching and writing the Motion [41]. (Defs.' Reply [172] 11, 28.)

The undersigned has reviewed defense counsel's billing records [157-2] and summary [157-12] of the fees associated with the instant Motion [41].[22]  The

---

[22] Several of the billing dates in defense counsel's summary [157-12] are incorrect: (1) on December 1, 2008, Mr. Wheat billed 0.05 of an hour (misdated as December 2, 2008, in the summary), (2) on December 2, 2008, Mr. Wheat billed 0.1 of an hour (misdated as December 3, 2008, in the summary), and (3) on January 21, 2009, Mr. Wheat billed 0.6 of an hour (misdated as January 22, 2009, in the summary). (Compare Supp. Andersen Decl. [157] Ex. 1 [157-2], with id. Ex. 5-B3 [157-12].)

32

following hours recorded on the summary should be excluded from any award for the reasons noted:  1.8 hours billed by Ms. Capps on October 9, 2008 (not clearly related to Motion [41]); 0.05 of an hour billed by Mr. Wheat on October 23, 2008 (portion not related to Motion [41], leaving 0.05 billable for this date); and 0.2 of an hour billed by Mr. Andersen on January 6, 2009 (no billing record).

The following hours reflected in the billing records, but omitted from the summary, should be included in any award because they are associated with the Motion [41] and are reasonable:  0.1 of an hour billed by Mr. Wheat on December 29, 2008; 0.1 of an hour billed by Ms. Dickerson on January 26, 2009; and 2.34 hours billed by Ms. Dickerson on February 3, 2009.

Including these adjustments, defense counsel billed $14,864.25 for 57.44 hours associated with the Motion [41] and Reply [55].  Additionally, Mr. Andersen spent 0.8 of an hour and a paralegal spent 5.2 hours, at a cost of $1,048, compiling related billing records.  (App. A at 5.)  The adjusted total sought is $15,912.25 for 63.44 hours.  (Id.)

The undersigned concludes that the hours billed in 2008 (22.85 hours) by defense counsel to produce the initial Motion [41] are not excessive, redundant, or unnecessary, but recommends that the hours billed in 2009 (32.25 hours) to write the

33

Reply [55] be reduced.[23]   While five attorneys worked on the matter in 2008, Ms. Inegbenebor performed the majority of the initial work, 15.2 hours out of 22.85 hours.   Ms. Inegbenebor spent 12.7 hours researching and writing the supporting brief, and 2.5 hours conferring with co-counsel and corresponding with opposing counsel.  That time is reasonable for the work produced.  Additionally, the remaining four timekeepers reasonably spent 7.65 hours assisting her with strategy conferences, reviewing drafts, and corresponding with opposing counsel.

In 2009, three timekeepers devoted 32.25 hours to the Reply [55].  Mr. Wheat billed 2 hours for reviewing CGMC's opposition brief and meeting with Ms. Dickerson, the associate assigned to research and draft the Reply [55].  Likewise, Mr. Andersen billed 3.85 hours for reviewing the draft.  While those hours are reasonable and not redundant, the remaining hours billed by Ms. Dickerson are excessive and should be reduced.  Ms. Dickerson spent 26.3 hours researching and writing the fourteen-page Reply [55], and 2.44 hours conferring with Messrs. Wheat and

---

[23] Defendants filed their Motion [41] on December 30, 2008.  On December 31, 2008, Mr. Andersen billed 0.2 of an hour for corresponding with opposing counsel.  Plaintiffs filed a response on January 20, 2009 [48], and defendants next billed their clients for work on that issue on January 21, 2009.  (See Supp. Andersen Decl. [157] Ex. 1 [157-2] at 25, Ex. 5-B3 [157-12].)  Therefore, the undersigned associates the hours billed by Mr. Andersen with the original Motion [41] for purposes of this analysis.

34

Andersen.  While it was reasonable for Ms. Dickerson, an associate with only two years experience, to meet separately with senior partners Wheat and Andersen on different aspects her assignment (for a total of 2.44 hours), spending 26.3 hours researching and writing the Reply [55] is excessive.

The Reply [55] produced by Ms. Dickerson is similar in structure and complexity to the Motion [41].  Ms. Inegbenebor spent only 12.7 hours or the equivalent of one-and-a-half workdays to produce the Motion [41].  In contrast, Ms. Dickerson spent 26.3 hours, more than three workdays, to produce the Reply [55].  Although Ms. Inegbenebor is a senior associate with ten years experience and Ms. Dickerson is a new associate with only two years experience, the difference in hours spent producing those similar documents is unreasonable.  Considering Ms. Dickerson's experience, the work produced, and the circumstances of the case, the undersigned concludes that 20 hours (a reduction of 6.3 hours), or two-and-a-half workdays, is reasonable for researching and writing the Reply [55].  See Norman, 836 F.2d at 1306 (noting that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done").  It is reasonable for a less-experienced associate to spend two-and-a-half workdays to research and write a brief

that a more-experienced associate could produce in one-and-a-half workdays. Thus, the Court should award only 22.44 hours for Ms. Dickerson's time in 2009. (App. A at 6.)

In sum, the undersigned **REPORTS** that the reasonable fees to prepare and file the Motion [41] and Reply [55], and to compile fee information related thereto, total $14,652.25 for 57.14 hours. (App. A at 6.) Judge Pannell ordered CGMC's former attorneys and their law firm to pay these fees. (See Order of Mar. 24, 2009, at 22 ("Under the circumstances presented here, the court concludes that CGMC's attorneys will only be deterred from taking advantage of an unrepresented party by making direct misrepresentations of the law if they and their law firm are forced to pay the defendants' reasonable attorneys' fees for calling CGMC's behavior to the court's attention.").) Accordingly, the undersigned **RECOMMENDS** that CGMC's former attorneys (Messrs. Ichter and Weiss) and their law firm (Adorno & Yoss) pay $14,652.25 to defendants. (See supra note 5.)

B. **Award for Attorneys' Fees Application and Opposing CGMC's Request for Reconsideration and Appeal**

Defense counsel seek fees for filing their declarations pursuant to the March 24, 2009 Order, and responding to plaintiffs' and plaintiffs' counsel's Motion for

36

Reconsideration of the Court's Order of March 24, 2009 [86] and their appeal (Notice of Appeal [91]) of that Order, both of which were unsuccessful. (See Order of June 11, 2009 [114] (denying Mot. for Reconsideration [86] and Motion for Hr'g [87]); Eleventh Circuit Order of July, 27, 2009 [124] (dismissing appeal for lack of jurisdiction).)

### 1.    Reasonable Fees Related to Application for Attorneys' Fees

On March 31, 2009, defendants filed their declarations [85] of fees and costs associated with the three motions addressed supra Part IV.A. (i.e., docket entries [36, 37, and 41]). On April 14, 2009, plaintiffs filed a Response [90], and on May 1, 2009, defendants filed a twenty-five page Reply [98] with four exhibits [98-2 through 98-5]. On June 25, 2009, defendants filed supplemental declarations of Mr. Andersen [119] and Mr. Wheat [120]. Plaintiffs do not object to specific items contained in this portion of defendants' fee application. Mr. Ichter argues that CGMC and its former counsel should not be penalized for opposing defendants' application if the fee request is found to be manifestly excessive. (Ichter Resp. Supp. Decl. [165] 27.)

37

Defendants seek $15,050.50 in attorneys' fees for 58.70 hours of work associated with their attorneys' fees application.  (Supp. Andersen Decl. Ex. 5-B5 [157-14].)

For the reasons set forth in the undersigned's Order of December 9, 2009, defendants are entitled to reasonable fees for litigating the amount of attorneys' fees to be awarded pursuant to Judge Pannell's March 24, 2009 Order.  (See Order of Dec. 9, 2009, at 2 n.3.)  The undersigned has reviewed defense counsel's billing records [157-2] and summary [157-14] of the fees associated with their application. The following hours recorded on the summary should be excluded from any award for the reasons noted:  0.3 of an hour billed by Mr. Andersen on July 8, 2009 (no billing record ); 0.2 of an hour billed by Mr. Wheat on August 13, 2009 (not related to the above fee application, but to defendants' Motions to Dismiss [95] and for Partial Summary Judgment [96]); and 0.2 of an hour billed by Mr. Andersen on August 14, 2009 (same).

Including these adjustments, defendants seek $14,762.50 for 58 hours their counsel spent preparing the application for attorneys' fee awarded pursuant to the March 24, 2009 Order.  (App. A at 7.)

38

While the hours associated with the initial attorneys' fees application [85] are reasonable, the hours billed to produce the Reply [98] are excessive and should be reduced. Seven timekeepers participated in this activity, including four attorneys, two paralegals, and a library assistant. Ms. Banich and Ms. Inegbenebor, both senior attorneys with ten or more years experience, performed the majority of the research and writing, 12.1 hours and 17.8 hours, respectively. Ms. Banich wrote the first half of the Reply [98] (the statement of facts), reviewing the relevant case history and plaintiffs' and their counsel's behavior. Ms. Inegbenebor wrote the second portion, setting forth the applicable law and defendants' arguments. Mr. Andersen, a partner with more than thirty years of experience, also contributed 7.4 hours to reviewing and preparing the Reply [98].[24] Additionally, the paralegals and library assistant assisted with researching, cite checking, shepardizing, and compiling exhibits.

While defense counsel properly made use of lower-rate timekeepers to reduce the cost of producing the Reply [98], the amount of time billed by experienced counsel is excessive given the work product produced. Defendants' Reply [98] is similar in complexity to their two Motions for Sanctions [37, 41], also written by Ms.

---

[24] It does not appear that the above work was redundant. The undersigned observes that it is not unreasonable to have associates collaborate on a document, each writing or researching a separate portion, or to have a partner revise their work.

Inegbenebor in 34.7 hours and 12.7 hours, respectively.  Given the length of the

Reply [98], its familiar subject matter, and the experience of the attorneys working

on the matter, the undersigned concludes that 37.3 hours (representing more than

four-and-a-half workdays) for its production should be reduced by 25% to 27.98

hours (representing three-and-a-half workdays by the three attorneys).  Thus, the

undersigned recommends reducing those hours proportionally by limiting Ms. Banich

to 9.08 hours, Ms. Inegbenebor to 13.35 hours, and Mr. Andersen to 5.55 hours.

(App. A at 8.)

In sum, the undersigned **REPORTS** that the reasonable fees incurred in

preparation of defendants' application for attorneys' fees pursuant to the March 24,

2009 Order total $12,019.90 for 48.68 hours.  (App. A at 8.)

## 2. <u>Reasonable Fees to Oppose Motion for Reconsideration [86]</u>

On April 6, 2009, plaintiffs requested that Judge Pannell reconsider [86] his

March 24, 2009 Order sanctioning them and their counsel.  On April 23, 2009,

defendants filed their twenty-two page Response [92] and four exhibits [92-2 through

92-5].  They reviewed CMGC's and its counsel's behavior during Mr. Grissom's

deposition and discovery, including three short excerpts from Mr. Grissom's

deposition. (Defs.' Opp'n Mot. Recons. [92] 1-9, 12-18.)  Defendants also argued

40

that a hearing was not required for Judge Pannell to impose sanctions. (Id. at 18-21.)

Defendants seek $17,852.80 in attorneys' fees for 68.07 hours of work associated with their Response [92] (which includes $1,246 for compiling their related attorneys' fees). (Supp. Andersen Decl. Ex. 5-B4 [157-13].)

The undersigned has reviewed defense counsel's billing records [157-2] and summary [157-13] of the fees associated with the Response [92]. The summary indicates that Mr. Andersen billed 0.2 of an hour on May 27, 2009. (Supp. Andersen Decl. Ex. 5-B4 [157-13].) However, that time is not clearly related to the Response [92] and should be excluded from any award. Additionally, the following hours reflected in the billing record, but omitted from the summary, should be included in any award because they are associated with the Response [92] and reasonable: 0.05 of an hour billed by Mr. Wheat on April 9, 2009; and 0.25 of an hour billed by Mr. Andersen on June 11, 2009.

Including those adjustments, defense counsel spent 60.57 hours preparing the Response [92] at a cost of $16,648.80. They spent an additional 7.6 hours (0.7 of an hour billed by Mr. Andersen and 6.9 hours billed by a paralegal) at a cost of $1,246

41

compiling their billing records.  (See App. A at 9.)  The adjusted total sought is $17,894.80 for 68.17 hours.  (Id.)

The undersigned concludes that the hours spent preparing for and producing the Response [92] are excessive, and recommends that they be reduced.  Defense counsel staffed the Response with five timekeepers:  three attorneys (two partners and one associate), and two paralegals.  The use of paralegals to review, cite check, and organize documents was reasonable and appropriate.  Likewise, defense counsel reasonably assigned Ms. Capps, an associate with one year of experience, to review Mr. Grissom's deposition (10.9 hours), and conduct research and produce a draft (11 hours).  The amount of time that Ms. Capps spent to research and draft the Response [92] is reasonable given her experience.  However, the time that she devoted to reviewing the deposition and documenting applicable excerpts is excessive and should be reduced by fifty percent (from 10.9 hours to 5.45 hours).  Indeed, Ms. Capps spent almost as much time reviewing the deposition as she did researching and writing the draft Response.  Notably, the Response [92] does not rely heavily on the deposition, only citing three short excerpts.  Additionally, Mr. Wheat spent 2.67 hours conferring with Ms. Capps and co-counsel regarding the Response.  Thus, it

42

was unreasonable to bill defendants for Ms. Capps's misapplied effort and fees may not be awarded for those hours.

Likewise, Mr. Wheat spent 18 hours preparing and editing the Response [92], and Mr. Andersen spent an additional 3 hours preparing that same document. While it is reasonable and appropriate for a senior partner to review and edit a draft written by an associate, twenty-one hours by two partners is excessive given the work product produced. The undersigned recommends reducing Mr. Wheat's time spent preparing the Response by 50% (from 18 hours to 9 hours). Moreover, given his minimal role in this effort, the 3 hours that Mr. Andersen (also an experienced a partner) spent preparing the Response is unreasonable and should not be allowed.[25] Finally, a paralegal spent 5.7 hours to review and later "finalize filing" of the document, in addition to the 7.1 hours spent by another paralegal to cite check and organize the document. Given the amount of time spent on the Response [92] by two partners, an associate, and a paralegal, it is unreasonable for a second paralegal to spend an additional 5.7 hours to review and finalize it. Those hours should be disallowed. Thus, it would be reasonable to limit Mr. Wheat to 12.32 hours for his

---

[25] Mr. Andersen reasonably spent 0.25 of an hour on June 11, 2009, reviewing the Court's Order [114] denying plaintiff's Motion for Reconsideration [86] and corresponding with opposing counsel.

43

work on the Response [92], to limit Mr. Andersen to 0.25 of an hour, to limit Ms. Capps to 17.75 hours, and to limit one paralegal to 7.1 hours.  (App. A at 10.)

In sum, the undersigned **REPORTS** that the reasonable fees associated with the Response [92] total $10,955.80 for 45.02 hours.  (See App. A at 10.)

### 3.    Reasonable Fees to Oppose Appeal

On April 23, 2009, plaintiffs filed their Notice of Appeal [91] of Judge Pannell's March 24, 2009 Order.  On June 17, 2009, defendants filed their Motion to Dismiss Appeal with the Eleventh Circuit.  (Notice of Filing Mot. Dismiss Appeal [118] Ex. [118-2] (Motion and brief).)  Defendants' Motion to Dismiss Appeal consists of seven substantive pages, including a procedural background of the case, basic case law regarding the Eleventh Circuit's jurisdiction over final district court decisions, argument, case law regarding orders awarding sanctions, and a short conclusion.  (Id. Ex. [118-2] at 1-7.)  On June 29, 2009, plaintiffs responded, and, on July 7, 2009, defendants replied.  Defendants' Reply is six pages long and discusses cases cited by plaintiffs and cases supporting defendants' position, including cases cited in their initial brief.[26]

--------------------

[26] The undersigned obtained a copy of defendants' Reply from the Eleventh Circuit's Clerk of Court.

44

Defendants seek $30,206.32 in attorneys' fees for 119.35 hours of work associated with plaintiffs' appeal (which includes $1,060 for research related to attorneys' fees).  (Supp. Andersen Decl. Ex. 5-B6 [157-15].)  Adorno & Yoss argue that defendants overstaffed this appeal and seek exorbitant fees for the associated work.  (Adorno & Yoss Br. Opp'n [163] 24-25.)  Similarly, Mr. Ichter argues that the issue on appeal was not complex, and that the requested fees are manifestly excessive.  (Ichter Resp. Supp. Decl. [165] at 24-25.)  Defendants respond that the issue of appellate jurisdiction required careful research.  (Defs.' Reply [144] 10.)  They also contend that the Motion [118-2] was filed after their repeated requests that plaintiffs dismiss the appeal.  (Id. at 11.)

The undersigned has reviewed defense counsel's billing records [157-2] and summary [157-15] of the fees associated with the appeal.  Defendants' summary indicates that Mr. Wheat billed 0.1 of an hour on May 27, 2009, and that Mr. Andersen billed 2.6 hours on July 8, 2009.  (Supp. Andersen Decl. Ex. 5-B6 [157-15].)  However, it is not clear from the billing records [157-2] that those hours relate to the appeal.  Additionally, the summary incorrectly reports two billing entries:  on June 30, 2009, Mr. Andersen billed 1.2 hours (not 0.6 of an hour), and on July 7,

45

2009, a paralegal billed 0.8 of an hour (not 1.4 hours billed on July 8, 2009).[27]

(Compare Supp. Andersen Decl. [157] Ex. 1 [157-2], with id. Ex. 5-B6 [157-15].)

Including these adjustments, defendants' attorneys spent 111.35 hours opposing the appeal at a cost of $28,184. Defense counsel also incurred $67.98 in costs for correspondence with the Eleventh Circuit. Additionally, after the Reply was filed, associate Christina Ryan spent 5.3 hours (at a cost of $1,060) to research recovery of attorneys' fees for appellate work. (Supp. Andersen Decl. [157] Ex. 5-B6 [157-15].) (App. A at 11.) The adjusted total sought is $29,331.98 for 116.65 hours. (Id.)

The undersigned concludes that the timekeepers assigned to the appeal and the hours billed for preparing the initial Motion to Dismiss Appeal [118-2] and Reply are excessive. Defense counsel staffed the appeal with seven timekeepers, including two partners, of counsel, a senior associate, an associate, and two paralegals. The two partners both reviewed the same notices from the Eleventh Circuit, supervised the associate assigned to work on this uncomplicated appeal, and repeatedly conferred with one another. After careful review of the billing record, the undersigned

---

[27] Defendants note the discrepancy in the paralegal's billing record in their January 12, 2010 Reply. (See Defs.' Reply [172] 32.)

concludes that 20.4 hours billed by these partners for their work on the Motion [118-2] and Reply (6.9 hours by Mr. Wheat and 13.5 hours by Mr. Andersen) are excessive and should be reduced by 50% (leaving 3.45 hours for Mr. Wheat and 6.75 hours for Mr. Andersen). However, the remaining efforts of Messrs. Wheat (1.4 hours) and Andersen (0.95 of an hour), including corresponding with opposing counsel, should be allowed. (App. A at 12.)

Additionally, on May 6 and 7, 2009, Ms. Capps spent 6.7 hours reviewing the Eleventh Circuit's local rules and discussing them with Mr. Wheat. (Supp. Andersen Decl. [157] Ex. 1 [157-2].) This was an unreasonable amount of time for the task; therefore, the undersigned recommends reducing that time to 1.5 hours. (App. A at 12.)

While the supervised use of Ms. Capps, an associate with one year of experience, to research and draft the initial Motion [118-2] and Reply was reasonable, the billing record reflects that a senior associate and of counsel repeated her work. Ms. Capps spent about 20 hours conferring with partners Wheat and Andersen, and researching and writing the Motion [118-2]. Later, Ms. Inegbenebor (a senior associate with ten years of experience) and Ms. Banich (of counsel with fourteen years of experience) spent an additional 2.45 and 29.2 hours, respectively,

47

conferring about, researching and revising the Motion to Dismiss Appeal [118-2] (totaling 31.65 hours). The appeal was not complex and did not require the additional expertise of senior counsel. It was unreasonable for defense counsel to bill an additional 31.65 hours at a cost of $8,813 for that work product given Ms. Capps's substantial supervised effort. Therefore, Ms. Inegbenebor's and Ms. Banich's efforts should be excluded entirely. Likewise, it was unreasonable for a paralegal to spend 4.8 hours cite checking the Motion to Dismiss Appeal [118-2] given the amount of time Ms. Capps devoted to the document and the limited amount of case law and statutes cited. Thus, the number of paralegal hours spent cite checking the Motion [118-2] should be reduced by 50% (from 4.8 hours to 2.4 hours).

Ms. Capps also spent 17.2 hours researching and writing the Reply. This is excessive given the amount of time she devoted to the initial brief and her discussion of previously cited (and thus familiar) case law. Therefore, the undersigned recommends reducing that time by 75% (from 17.2 hours to 4.3 hours). However, the 2.4 paralegal hours spent researching, cite checking, and filing the Reply, are reasonable. Thus, Mr. Wheat may bill 4.85 hours for his work on the appeal, Mr. Andersen may bill 7.7 hours, Ms. Capps may bill 31.65 hours, and the paralegals may

48

bill 4.8 hours.  Ms. Banich and Ms. Inegbenebor's hours should be disallowed.  (App. A at 12.)

In sum, the undersigned **REPORTS** that the reasonable fees and costs associated with opposing plaintiffs' appeal to the Eleventh Circuit total $12,706.98 for 54.3 hours.  (App. A at 12.)

### 4.    <u>Recommended Apportionment of Award</u>

As shown above, the undersigned **REPORTS** that defense counsel could reasonably bill $12,019.90 for their application for attorneys' fees pursuant to the March 24, 2009 Order, $10,955.80 for opposing plaintiffs' Motion for Reconsideration of that March 24 Order, and $12,706.98 for opposing the Eleventh Circuit appeal.  Thus, defendants should receive an award of $35,682.68 for these activities.  The issue is how best to apportion these fees, costs, and expenses among those entities and persons responsible for them: (1) CGMC; (2) Mr. Ichter; and (3) CGMC's former attorneys (Messrs. Ichter and Weiss) and their law firm (Adorno & Yoss).

One way to do so is to examine their relative culpability in the underlying motions.  In Part IV.A. <u>supra</u>, the undersigned recommended a total award of $64,095.57 in attorneys' fees and costs to defendants for their counsel's work on the

49

three Motions [36, 37, 41] addressed in Judge Pannell's March 24, 2009 Order. Of that recommended amount, CGMC is responsible for $20,323.25 (32% of $64,095.57); Mr. Ichter is responsible for $29,120.07 (45% of $64,095.57); and CGMC's former attorneys and law firm (Adorno & Yoss) are responsible for $14,652.25 (23% of $64,095.57).

Defendants then incurred an additional $35,682.68 in attorneys' fees and costs as a direct result of complying with Judge Pannell's March 24 Order or opposing efforts by CGMC, Mr. Ichter, and CGMC's former attorneys and law firm (Adorno & Yoss) to overturn their liability under that Order. Thus, it is reasonable to assess the burden of these additional fees and costs among these entities or persons responsible for causing them using the percentages reflected above. Thus, CGMC's portion of these additional fees and costs should be $11,418.45 (32% of $35,682.68); Mr. Ichter's portion should be $16,057.21 (45% of $35,682.68); and the amount assessed to CGMC's former attorneys (Messrs. Ichter and Weiss) and their law firm (Adorno & Yoss) should be $8,207.02 (23% of $35,682.68).

50

C.     **Reasonable Award Pursuant to December 2, 2009 Order**

1.     **Motion to Dismiss [95]**

On April 23, 2009, defendants filed their Motion to Dismiss with Prejudice and to Impose Other Sanctions for Perjury and Obstruction of Justice [95], with an incorporated twenty-five page memorandum supported by four exhibits [95-2 through 95-5].  In that document, defendants review the litigation history, possibly perjured deposition testimony, plaintiffs' report, plaintiffs' alleged discovery failures, and plaintiffs' misrepresentation of the law.  (Defs.' Mot. Dismiss [95] 1-17.)  Defendants also discuss the Court's authority to impose sanctions and apply it to plaintiffs' behavior.  (Id. at 17-25.)  Plaintiffs responded [105] and defendants filed a fifteen-page Reply [115] with two exhibits [115-2 through 115-3] on June 19, 2009.[28]  In that Reply, defendants review plaintiffs' misrepresentations in Mr. Grissom's deposition and to the courts, and compare plaintiffs' position to their contrary admissions.  (Defs.' Consolidated Reply [115] 1-15.)  The Reply [115] repeatedly cites the record, but includes little case law.  (See generally id.)

---

[28] Defendants' Consolidated Reply Brief [115] was filed in support of both their Motion to Dismiss [95] and Motion to Stay [97].  The Reply focuses primarily on the Motion to Dismiss [95].

Defendants seek $28,650.20 in attorneys' fees for 107.23 hours of work associated with the Motion [95].  (Andersen Decl. [122] Ex. E.)

Plaintiffs argue that defense counsel overstaffed this case and billed twice the attorneys' fees billed in similar cases.  (CGMC's Br. Opp'n [161] 1-2, 6-7.)  Adorno & Yoss argues that defense counsel overstaffed the Motion [95], restated many of the same facts and arguments raised in their prior briefs, and conducted minimal analysis of the case law.  (Adorno & Yoss Br. Opp'n [163] 23.)  It also argues that the time spent preparing the Reply is excessive.  (Id. at 23-24.)  Mr. Ichter argues that the initial brief repeats the same arguments raised previously and mainly relies on string citations to case law.  (Ichter Resp. Suppl. Decl. [165] 23-24.)  Defendants reply that the Motion required a review of the entire case, and research regarding perjury and the Court's inherent power to sanction.  (Defs.' Reply [172] 30.)  They also assert that the Motion [95] sought relief different from that requested in other motions.  (Id. at 31.)  According to defendants, they carefully analyzed the record to demonstrate plaintiffs' concealed scheme of subterfuge, evasion, and obstruction.  (Defs.' Reply [144] 10.)

The undersigned has reviewed defense counsel's billing records and summary [122] of the fees associated with the instant Motion [95].  The following hours

52

recorded on the summary should be excluded for the noted reasons: 2.7 hours billed by Ms. Banich on April 2, 2009 (not clearly related to Motion [95]); 0.25 of an hour billed by a paralegal on April 23, 2009 (not clearly related to Motion [95]); 4.2 hours billed by Mr. Andersen on April 24, 2009 (billed for "preparing" the Motion [95], which was filed the prior day); and 0.2 of an hour billed by Mr. Wheat on June 19, 2009 (unreasonable).[29]    Including those adjustments, defense counsel billed $26,111.20 for 99.88 hours associated with the Motion [95] and Reply [115]. (App. A at 13.)

The undersigned concludes that the hours billed for both the initial Motion [95] and Reply [115] are excessive and should be reduced. While four attorneys and one paralegal worked on the initial Motion for a total of 31.25 hours, Ms. Banich performed the majority of that work, 19.1 hours, with other timekeepers making small, reasonable contributions (0.2 of an hour by Mr. Wheat to revise it, 2.55 hours by Mr. Andersen to assist in its preparation, and 5.2 hours by a paralegal for cite checking and proofing). Ms. Inegbenebor spent an additional 4.2 hours drafting the

---

[29] It was unreasonable for Mr. Whet to bill defendants 0.2 of an hour to receive and review an email from the Court confirming the filing of the consolidated Reply [115] and emailing co-counsel. Therefore, it is also unreasonable to impose the cost of that time on plaintiffs and their former attorneys of record.

53

initial brief.  The time spent by Ms. Inegbenebor should be excluded as unreasonable given the number of hours bill by two partners and Ms. Banich (who had fourteen-years of experience).  The 27.05 hours Ms. Banich, Messrs. Wheat and Andersen, and a paralegal spent to produce the initial brief is comparable to time spent on defendants' similar work product.  For example, as discussed supra Part IV.A.3, defense counsel reasonably billed 22.85 hours to produce their similarly structured and complex Motion for Sanctions [41] and fifteen-page brief.

Likewise, the 40.2 hours (or five work days) Ms. Inegbenebor spent researching and drafting the fifteen-page Reply [115] are excessive.  The undersigned further reports as excessive the additional 17.95 hours spent by Ms. Inegbenebor (10.7 hours) and Ms. Capps (7.25 hours) to confer with Ms. Banich, edit the Reply, assist with research, and prepare a table of citations.  While those contributions are reasonable and not redundant, the amount of time billed by the three attorneys (58.15 hours) was not warranted by the work product.  The undersigned recommends reducing their time proportionally by 75% to 14.54 hours; thus, the undersigned recommends limiting Ms. Banich to 10.05 hours, Ms. Inegbenebor to 2.68 hours, and

54

Ms. Capps to 1.81 hours.[30]   Similarly, the 0.6 of an hour that Mr. Wheat spent reviewing defendants' response and conferring with Ms. Banich was unreasonable in light of Mr. Andersen's continued supervision of the matter (3.25 hours billed for reviewing plaintiffs' response and preparing the Reply).  However, the 6.63 hours spent by a paralegal to assist in preparing the Reply, producing a time line, and cite checking the document are reasonable give the multiple citations to the record (the document cites minimal case law).  Thus, Mr. Wheat may bill 0.2 of an hour for his work on the matter, Mr. Andersen may bill 5.8 hours, Ms. Banich may bill 29.15 hours, Ms. Inegbenebor may bill 2.68 hours, Ms. Capps may bill 1.81 hours, and the paralegals may bill 11.83 hours.  (App. A at 14.)

In sum, the undersigned **REPORTS** that reasonable fees to prepare and file the Motion [95] and Reply [115] total $13,248.80 for 51.47 hours.  (App. A at 14.) The District Court directed that all fees and costs assessed pursuant to the Order of December 2, 2009, be the joint and several responsibility of CGMC and its former attorneys of record.  (Order of Dec. 2, 2009, at 46.)  Accordingly, the undersigned **RECOMMENDS** that CGMC and its former attorneys of record (i.e., Messrs. Ichter

---

[30] Reducing the hours spent on this fifteen-page Reply [1115] brings it in line with the number of hours (12.7) Ms. Inegbenebor spent researching and writing the fourteen-page brief supporting defendants' Motion for Sanctions [41].

AO 72A
(Rev.8/82)

and Weiss and their law firm, Adorno & Yoss) pay defendants the sum of $13,248.80.

### 2.     Motion for Partial Summary Judgment [96]

On April 27, 2009, defendants filed their Motion for Partial Summary Judgment as to Liability for Attorneys' Fees Incurred Due to Wrongful Seizure [96], a twenty-five page brief [96-2], and a twenty-two page Statement of Undisputed Facts [96-3] with six exhibits [96-4 through 96-9]. Defendants succinctly review the litigation history, Georgia's seizure statute, plaintiffs' misrepresentations to the courts, and the case's procedural background. (Defs.' Mem. Support Mot. Partial Summ. J. [96-2] 1-12.) Defendants detail CGMC's bad faith, including discovery disputes, later admissions, and misrepresentations during Mr. Grissom's deposition. (Id. at 9-14.) Defendants then request summary judgment for wrongful seizure, examine the relevant law, and request attorneys' fees. (Id. at 14-25.) Plaintiffs filed a twenty-three page response [108], asserting that they mistakenly omitted language from the Georgia seizure statute and did not act in bad faith, and that defendants avoided participating in discovery. (Id. at 4-9, 12-14, 16-17.) Plaintiffs also cite the findings of Jon M. Crate of FAI Materials Testing Laboratory as support for their contention that there are minimal differences between the machines at issue. (Id. at

56

10-11.)  On June 22, 2009, defendants filed a fifteen-page Reply [116] and a thirty-two page response [117] to plaintiffs' Statement of Additional Material Facts [108-7].  Defendants review plaintiffs' alleged bad acts and misrepresentations, and argue that plaintiffs conceded wrongful seizure of the IWF machine.  (Defs.' Reply Support Mot. Partial Summ. J. [116] at 1-5.)  Defendants restate the applicable law and their arguments regarding wrongful seizure, and clarify their argument for attorneys' fees.  (Id. at 6-15.)  Defendants also address plaintiffs' use of Mr. Crate.  (Id. at 9-11.)

Defendants seek $44,650.60 in attorneys' fees for 185.39 hours of work associated with the Motion [96] and Reply [116] (which includes time spent researching recovery of fees and compiling fee information).  (Andersen Decl. [122] Ex. C.)

Plaintiffs and Adorno & Yoss argue that defendants overstaffed this case.  (CGMC's Br. Opp'n [161] 1-2, 6-7; Adorno & Yoss Br. Opp'n [163] 22.)  Adorno & Yoss also argue that the majority of defendants' brief repeats facts and law cited in earlier briefs, and the cost of producing the Reply [116] is disproportionate to the work product.  (Adorno & Yoss Br. Opp'n [163] 22-23.)  Mr. Ichter argues that the time spent on this Motion [96] and Reply [116] is manifestly excessive and warrants a significant reduction of 75-to-90%.  (Ichter Resp. Supp. Decl. [165] 21-23.)

57

Defendants reply that the Motion [96] required careful review and analysis of disputed factual issues and case law.  (Defs.'s Reply [172] 29.)

The undersigned has reviewed defense counsel's billing records and summary [122] of the fees associated with the instant Motion [96].  The following hours recorded on the summary should be excluded from any award for the reasons noted: 0.34 of an hour billed by Mr. Andersen on April 14, 2009 (discrepancy with Supp. Andersen Decl. [157-2] at 47, only 0.16 of an hour may be billed); 0.25 of an hour billed by Mr. Andersen on April 24, 2009 (discrepancy with Supp. Andersen Decl. [157-2] at 51, only 0.25 of an hour may be billed); 0.2 of an hour billed by Mr. Andersen on May 27, 2009 (not clearly associated with Motion [96] and duplicate billing entry); 0.1 of an hour billed by Mr. Wheat on June 22, 2009 (unreasonable);[31] and 1.4 hours billed by Mr. Andersen on July 6, 2009 (no billing record).[32]

---

[31] Mr. Wheat may not reasonably bill defendants, nor CGMC and its former counsel, for 0.1 of an hour spent reviewing an email from the Court confirming the filing of the Motion [96].

[32] On June 25, 2009, a paralegal billed 10.3 hours to compile attorneys' fees information for the instant Motion [96] and related motions.  The undersigned does not adjust that entry because the entire cost is recoverable pursuant to Judge Pannell's December 2, 2009 Order, and was not also billed under the other motions addressed in this Report and Recommendation.  (Compare Andersen Decl. [122] 31, with Supp. Andersen Decl. [157] Ex. 1 [157-2] at 62.)

Including those adjustments, defense counsel billed $40,036.60 for 164.1 hours associated with the Motion [96], Reply [116], and response to plaintiffs' statement of additional facts [117].   Additionally, Mr. Wheat spent 0.1 of an hour, Mr. Andersen spent 3.4 hours, Ms. Ryan spent 2 hours, and a paralegal spent 13.5 hours, costing $3,714, researching and compiling defendants' attorneys' fees application and billing records.  (See App. A. at 15.)  The adjusted total sought is $43,750.60 for 183.1 hours.  (Id.)

The undersigned concludes that most of the hours billed by defense counsel to produce the Motion [96], initial brief, and response [117] to plaintiffs' statement of additional material facts are not excessive, redundant, or unnecessary, but recommends that the hours billed to write the Reply [116] be reduced.  While five attorneys worked on the matter, Ms. Inegbenebor performed the majority of the work (91 hours), with other attorneys making small, reasonable contributions (such as 0.6 of an hour by Ms. Capps for research, and 3.5 hours by Ms. Banich for writing objections to plaintiffs' statement of additional material facts).  However, given Ms. Inegbenebor's effort and experience, the time spent by Mr. Andersen counseling her and "preparing" the motion is unreasonable and should be reduced by 75% from 20.01 hours to 5 hours.  Likewise, given Mr. Andersen's involvement, the 0.75 of an

59

hour that Mr. Wheat spent reviewing the initial brief and Reply also is unreasonable and should be excluded.

Regarding the initial Motion [96], Ms. Inegbenebor spent 51.65 hours conferring with co-counsel, researching and writing the initial brief, and writing the statement of undisputed facts. That time is reasonable for the work produced. Likewise, the time spent by paralegals (36.65 hours) to create a time line of the relevant events, cite check, review, and edit the above documents, assemble exhibits, and draft an attorneys' fee declaration is reasonable. However, the 39.35 hours (or five work days) Ms. Inegbenebor spent researching and drafting the Reply, and responding to plaintiffs' statement of additional material facts are excessive. The undersigned recommends reducing that time by 30% to 27.55 hours (three-and-a-half workdays). Although the document is more than a reiteration of the initial motion, it did not warrant a week to produce (especially in light of Ms. Banich's assistance). Likewise, the 10.92 hours a paralegal spent on the Reply should be reduced by 30% to 7.64 hours. Thus, Mr. Wheat may bill 0.67 of an hour for his work on the matter, Mr. Andersen may bill 5 hours, Ms. Banich may bill 3.5 hours, Ms. Inegbenebor may bill 79.2 hours, Ms. Capps may bill 0.6 hours, and the paralegals may bill 44.29 hours. (App. A at 16.)

60

In sum, the undersigned **REPORTS** that reasonable fees and costs to prepare and file the Motion [96], Reply [116], to respond to plaintiffs' statement of additional material facts [117], and to research fee recovery and compile fee information total $33,889.40 for 152.26 hours. (App. A. at 16.) The District Court directed that all fees and costs assessed pursuant to the Order of December 2, 2009, be paid jointly and severally by CGMC and its former attorneys of record. (Order of Dec. 2, 2009, at 46.) Accordingly, the undersigned **RECOMMENDS** that CGMC and its former attorneys of record (i.e., Messrs. Ichter and Weiss and their law firm, Adorno & Yoss) pay defendants the sum of the sum of $33,889.40.

### 3.    Motion to Stay Discovery [97]

On April 30, 2009, defendants filed their eleven-page Motion to Stay Discovery Pending Resolution of Motion to Dismiss with Prejudice [97]. Defendants review the circumstances warranting sanctions, including the actions of Messrs. Ichter and Grissom, plaintiffs' refusal to produce documents, and the reasons why defendants filed their prior motions for sanctions and their related Motion to Dismiss [95]. (Id. at1-7.) Defendants argue that a stay is appropriate given the case law and circumstances and the expenses they had incurred due to plaintiffs' activities. (Id. at 7-11.) On May 18, 2009, plaintiffs filed a six-page Response [107], and

61

defendants filed their consolidated Reply [115] on June 19, 2009.  (See supra note 28.)

Defendants seek $10,469 in attorneys' fees for 40.5 hours of work associated with the Motion [97] and consolidated Reply [115].  (Andersen Decl. [122] Ex. D.)

Plaintiffs argue that defense counsel overstaffed this case, resulting in excessive billing.  (CGMC's Br. Opp'n [161] 1-2, 6-7.)  Adorno & Yoss argue that defendants' initial Motion [97] recites the same facts as prior briefs and that the consolidated Reply [115] only contains a one sentence reference to the Motion [97].  (Adorno & Yoss Br. Opp'n [163] 24-25.)

The undersigned has reviewed defense counsel's billing records and summary [122] of the fees associated with the instant Motion [97] and concludes that the following should be excluded from any award for the reasons noted:  0.7 of an hour billed by Mr. Andersen on April 27, 2009 (discrepancy with Supp. Andersen Decl. [157-2] at 51, only 0.7 of an hour may be billed); and 0.2 of an hour billed by Mr Wheat on June 19, 2009 (unreasonable).[33]  With that adjustment, defense counsel

---

[33] Mr. Wheat may not reasonably bill defendants, nor CGMC and its former attorneys for 0.2 of an hour spent to receive and review an email from the Court confirming filing of the Reply and emailing co-counsel.

billed $10,107 for 39.6 hours of work associated with the initial Motion [97] and consolidated Reply [115].[34]  (App. A at 17.)

After careful review of the billing records and the summary, the undersigned concludes that most of defense counsel's work on the Motion [97] was reasonable, but recommends eliminating the 0.9 of an hour that Mr. Wheat billed to prepare and review the Motion [97] and plaintiffs' response, given Mr. Andersen's significant contributions.  Likewise, 6.1 hours spent by a paralegal to cite check and prepare the initial brief is excessive, given the limited citations and its short length (eleven pages with no exhibits).  This amount should be halved.  Finally, because the Reply focused primarily on the Motion to Dismiss [95] and not on the Motion to Stay [97] (see supra Part IV.C.1), the undersigned recommends excluding the hours defense counsel and staff billed for producing the Reply [115] (i.e., time entries after April 30, 2009). Thus, with regard to the Motion to Stay Discovery [97], Mr. Andersen may bill 2.5 hours, Ms. Banich may bill 12.4 hours, and the paralegal may bill 3.05 hours.  (App. A at 18.)

--------------------------------------------

[34] As adjusted, the initial Motion consumed 21.4 hours ($5,502), while the Reply [115] consumed 18.2 hours ($4,605).

In sum, the undersigned **REPORTS** that the reasonable fees to prepare and file the Motion [97] (and excluding the Reply) total $4,899. (App. A at 18.) The District Court directed that all fees and costs assessed pursuant to the Order of December 2, 2009, be paid jointly and severally by CGMC and its former counsel of record. (Order of Dec. 2, 2009, at 43-45.) Accordingly, the undersigned **RECOMMENDS** that CGMC and its former attorneys of record (i.e., Messrs. Ichter and Weiss and their law firm, Adorno & Yoss) pay defendants the sum of $4,899.

### 4.     Fees Since Inception of Lawsuit Through March 30, 2009

Using defense counsel's billing records [157-2], the Court has prepared a spreadsheet (Appendix B hereto) listing the attorneys' fees incurred from the inception of this case through March 30, 2009. (Appendix B excludes the attorneys' fees and costs addressed supra Parts IV.A through C.3. and itemized in Appendix A hereto.) According to this spreadsheet, defense counsel billed $209,943.90 for 733.61 hours of work from the inception of this lawsuit to the filing of the second

64

Verified Amended Complaint [83] on March 30, 2009.[35]  This sum represents an average hourly rate for all timekeepers of $286.18.

As shown supra Parts IV.A through C.3, the undersigned has spent significant judicial resources reviewing defense counsel's voluminous fee applications, reviewing opposition briefs filed by plaintiffs, Mr. Ichter, and Adorno & Yoss, and reviewing defendants' numerous reply briefs.  In so doing, the Court parsed each relevant time entry, corrected defense counsel's often inaccurate summaries, and added time that had been inadvertently omitted.  Then, after review of those adjusted totals, the Court exercised its discretion to exclude time spent in excessive, redundant, or unnecessary work, and recommended amounts to be awarded.

Conducting a similar hour-by-hour analysis to determine an appropriate recommendation for the amount of attorneys' fees to be awarded since inception of this lawsuit through March 30, 2009 would require much more of the Court's limited resources.  In other words, detailed analysis of hundreds of additional time entries by numerous timekeepers in a manner similar to that conducted above would not be

---

[35] The undersigned excludes time not billed to the client, vague entries that do not clearly relate to the case, and time billed solely for checking Court email confirmation that a document was filed.  The undersigned excluded similar entries when adjusting defendants' billable hour summaries for the Motions addressed supra Parts IV.A through C, and prior to conducting its lodestar analysis.

AO 72A
(Rev.8/82)

feasible.  However, a reduction in the hours sought is necessary, because the number of hours billed (733.61) here for the work performed is unreasonably high.[36]

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices:  it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."  Bivins, 548 F.3d at 1350.  The "hour-by-hour" approach is based on Norman, 836 F.2d at 1303, and its progeny, which direct that "when hours are disallowed the court should identify the hours disallowed and explain why they were disallowed."  Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994).

> Implicit in the Norman hour-by-hour rule is the assumption that a district judge can feasibly and expeditiously engage in such a precise review.  Where fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources.

Id.

Accordingly, when faced with a voluminous billing record and a fee application that seems unreasonably high for the work performed, a district court

---

[36] This conclusion is the by-product of the undersigned's hour-by-hour analysis of the prior fee applications.  Defense counsel often employs too many timekeepers on a task, who in turn record excessive hours for the work performed.

66

need not engage in an hour-by-hour analysis, but rather may reduce the hours devoted to litigation in gross if warranted, provided that it gives "a concise but clear explanation of its reasons for the reduction." Loranger, 10 F.3d at 783; see also Webster Greenthumb Co. v. Fulton County, Ga., 112 F. Supp. 2d 1339, 1350 (N.D. Ga. 2000) ("where a fee application and supporting document are voluminous, a district court is not required to engage in an hour-by-hour analysis of the fee award"). Given the significant amount of time consumed by the aforementioned fee applications, it would be "impractical and a waste of judicial resources" for the undersigned to conduct an hour-by-hour review of the voluminous application seeking fees from inception. Loranger, 10 F.3d at 783. In accordance with the Eleventh Circuit's instruction, the undersigned provides below "a concise but clear explanation of its reasons" for an across-the-board reduction of defense counsel's hours. Id.

As detailed supra Parts IV.A through C.3, defense counsel's numerous applications (as adjusted by this Court to delete errors and add omitted time) sought attorneys' fees of $210,775.80 for 797.12 hours of work. After a thorough review of the billing records, summaries, and work product resulting from those hours, the Court recommended that defendants be awarded fees of $148,126.10 for 573.62

67

hours. Thus, after conducting an hour-by-hour analysis of defense counsel's fee applications, the undersigned reduced the hours sought by 28.04%.

Given the voluminous application for fees since inception of this lawsuit submitted by defense counsel, the undersigned finds that it would be a wise use of limited judicial resources to apply that same percentage reduction to these hours. As noted above, defense counsel seeks $209,943.90 for 733.61 hours worked (or an average of $286.18 per hour) since inception through March 30, 2009 (excluding hours already addressed). Applying an across-the-board reduction of 28.04% cuts those hours sought to 527.91. Multiplying those hours (527.91) by the average hourly rate ($286.18) yields a recommended reasonable attorneys' fees award of $151,077.28.

The District Court directed that all fees and costs assessed pursuant to the Order of December 2, 2009 be paid jointly and severally by CGMC and its former counsel of record. (Order of Dec. 2, 2009, at 43-45.) Accordingly, the undersigned **RECOMMENDS** that CGMC and its former attorneys of record (i.e., Messrs. Ichter and Weiss and their law firm, Adorno & Yoss) pay defendants the sum of $151,077.28.

AO 72A
(Rev.8/82)

5.     <u>Costs Since Inception of Lawsuit Through March 30, 2009</u>

The costs and expenses sought by defendants are listed after the "additional services" portion of their counsel's billing records [157-2].  From the inception of this case through the filing of the second Verified Amended Complaint [83] on March 30, 2009, the Court calculates that defendants have incurred costs and expenses of $14,411.15.  (The Court excludes $3,321.50 in expenses incurred within this time frame related to plaintiffs' Motion for Leave to File Second Amended Complaint [43]).[37]

Adorno & Yoss argue that certain items for which defendants seek reimbursement (<u>i.e.</u>, photocopies, legal research, Pacer, facsimiles, telephone calls, and messenger fees) are not recoverable as costs under 28 U.S.C. § 1920.  (<u>See</u> Adorno & Yoss Br. Opp'n [163] 26-28.)  Defendants reply that Judge Pannell did not limit the sanction to costs, but stated that the fee award also included expenses. Because the District Court sought to make defendants whole, the statutory definition of costs is irrelevant.  (Defs.' Reply [172] 34-35.)

---

[37] Later costs and expenses that are not clearly marked as relating to a Motion or issue for which costs and expenses were awarded pursuant to Judge Pannell's Orders are not included above.  It is defendants' responsibility, not the Court's, to identify recoverable costs and expenses.

69

The costs statute, 28 U.S.C. § 1920, "deals only with costs taxed pursuant to a final judgment." Sheila's Shine Prods., Inc. v. Sheila Shine, Inc., 486 F.2d 114, 130 (5th Cir. 1973);[38] see also Tom James Co. v. Morgan, 141 F. App'x 894, 900 (11th Cir. 2005) (district court's inherent power not limited by Fed. R. Civ. P. 54(d) or 28 U.S.C. § 1920). Given that there is no final judgment here, and Judge Pannell acted pursuant to the court's inherent power to sanction, all reasonable costs and expenses may be awarded.

The undersigned has reviewed the "additional services" section of defense counsel's billing records [157-2] and recommends excluding $2,246.80 for "copies" and $49.39 for "telephone." Those entries are undated and vague; thus, it is impossible for the Court to determine if they are reasonable, recoverable under Judge Pannell's Orders, or related to this litigation. Additionally, the undersigned excludes $3,621.37 in deposition expenses that were included in the costs recommended supra Part IV.A.2.[39] Thus, the undersigned **RECOMMENDS** that defendants recover

---

[38] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

[39] Defendants may also recover $67.98 for correspondence with the Eleventh Circuit (incurred after March 30, 2009). This amount is included in the costs recommended supra Part IV.B.3.

70

$8,493.59 in costs and expenses incurred from the inception of this lawsuit through March 30, 2009. (App. C.) Because the District Court directed that all fees and costs assessed pursuant to the Order of December 2, 2009, be paid jointly and severally by CGMC and its former counsel of record (see Order of Dec. 2, 2009, at 43-45), the undersigned **RECOMMENDS** that CGMC and its former attorneys of record (i.e., Messrs. Ichter and Weiss and their law firm, Adorno & Yoss) pay defendants the sum of $8,493.59.

## V.    SUMMARY AND CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that defendants be awarded a total of $311,836.32 for the reasonable attorneys' fees, costs, and expenses incurred by their counsel.    The components of that recommendation, and the entities or persons responsible for payment, are as follows:

### A.    Award Pursuant to the March 24, 2009 Order

#### 1.    Motion to Compel Complete Interrogatory Response [36]

$20,323.25, payable by CGMC

#### 2.    Motion for Sanctions and to Compel 30(b)(6) Deposition [37]

$29,120.07, payable by Cary Ichter

    **3.**      **Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 [41]**

    $14,652.25, payable by CGMC's former attorneys of record

**B.**      **Award for Complying With and Defending March 24, 2009 Order**

Defense counsel reasonably billed $35,682.68 in fees, costs, and expenses to complete the required attorneys' fee application; to oppose plaintiffs' Motion for Reconsideration [86]; and to oppose plaintiffs' appeal [91].   The undersigned recommends that this amount be apportioned as follows:

    1.      $11,418.45, payable by CGMC

    2.      $16,057.21, payable by Cary Ichter

    3.      $8,207.02, payable by CGMC's former attorneys of record

**C.**      **Award Pursuant to December 2, 2009 Order**

Under Judge Pannell's Orders, CGMC and its former attorneys of record (i.e., Messrs. Ichter and Weiss and their firm, Adorno & Yoss) are jointly and severally liable for the following reasonable attorneys' fees, costs, and expenses incurred by defendants in relation to the following:

    **1.**      **Motion to Dismiss [95]**

    $13,248.80

AO 72A
(Rev.8/82)

2.    **Motion for Partial Summary Judgment [96]**

$33,889.40

3.    **Motion to Stay Discovery [97]**

$4,899.00

4.    **Fees Since Inception to 3/30/09**

$151,077.28

5.    **Costs and Expenses Since Inception to 3/30/09**

$8,493.59

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 29th day of January, 2010.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COSTA & GRISSOM
MACHINERY COMPANY, INC.
and COSTA LEVIGATRICI, S.p.A.,

          Plaintiffs,                 CIVIL ACTION FILE

         v.                       NO. 1:08-CV-2948-CAP-WEJ

QINGDAO GIANTWAY
MACHINERY CO., LTD. and
LOBO MACHINERY
CORPORATION,

          Defendants.

## ORDER FOR SERVICE OF
## FINAL REPORT AND RECOMMENDATION

Let this Final Report and Recommendation of the United States Magistrate

Judge, appointed as Special Master in this case, made in accordance with 28 U.S.C.

§ 636(b)(2), Federal Rule of Civil Procedure 53(c), (e), and the Court's Local Rule

53.1, be filed and a copy, together with a copy of this Order, be served upon counsel

for the parties.

Pursuant to Fed. R. Civ. P. 53(f)(2), each party may file written objections, if

any, to the Final Report and Recommendation (or a motion to adopt or modify)

within twenty-one days of the receipt of this Order. Should objections be filed, they

shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.

The Clerk is directed to submit the Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 29th day of January, 2010.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2